COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RITA JOHNSON,

Defendant-Appellant.

UNPUBLISHED
December 29, 2015

No. 322432
Wayne Circuit Court
LC No. 13-007607-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

OLIVIA FLOYD,

Defendant-Appellant.

No. 324610
Wayne Circuit Court
LC No. 13-007607-FC

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

PER CURIAM.

In Docket No. 322432, defendant Rita Johnson ("Johnson") appeals as of right her bench trial convictions of arson of an insured dwelling, MCL 750.76(1)(a), and second-degree arson, MCL 750.73(1). Johnson was sentenced to 69 months to 20 years' imprisonment for the arson of an insured dwelling conviction and 69 months to 20 years' imprisonment for the second-degree arson conviction. In Docket No. 324610, defendant Olivia Floyd ("Floyd") appeals as of right her bench trial convictions of arson of an insured dwelling, MCL 750.76(1)(a), and second-degree arson, MCL 750.73(1). Floyd was sentenced to 4 years and 3 months to 20 years' imprisonment for the arson of an insured dwelling conviction and 4 years and 3 months to 20 years' imprisonment for the second-degree arson conviction. We affirm defendants' convictions and sentences, but remand the case in Docket No. 324610 for a determination of the factual basis for the court costs imposed on Floyd.

This matter arises out of two fires occurring at 9197 Devonshire, in Detroit, Michigan, during the early morning hours of June 6, 2013. Johnson is Floyd's mother. Floyd owned the

-1-

home at 9197 Devonshire, and Johnson rented the home from Floyd. Johnson maintained rental or personal property insurance on the contents of the home through Allstate Insurance Company ("Allstate"). The effective date of Johnson's insurance policy for the property was May 2, 2013, and there was a $50,000 policy cap for each claim. The policy covered losses or damage resulting from a theft or fire.

## I. MRE 404(b)

Johnson first contends the trial court erred in admitting testimony and evidence pertaining to previous fires that led to insurance claims by Johnson and her son, Darryl Floyd.[1] We disagree.

As discussed by our Supreme Court in *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003):

> The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion. However, the decision frequently involves a preliminary question of law, such as whether a rule of evidence or statute precludes the admission of the evidence. We review questions of law de novo. Therefore, when such preliminary questions are at issue, we will find an abuse of discretion when a trial court admits evidence that is inadmissible as a matter of law. [Citations omitted.]

Specifically, we review a trial court's decision to admit evidence under MRE 404(b) for an abuse of discretion. See *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). "A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*.

MRE 404(b) provides, in part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To admit evidence of prior bad acts, the evidence must be offered for a proper purpose under MRE 404(b), the proffered evidence must be relevant under MRE 402, and the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The

---

[1] Darryl, the brother of Floyd and son of Johnson, was a codefendant at trial. Darryl was found guilty of second-degree arson.

challenged evidence cannot be offered merely to show a defendant's criminal propensity, but rather, must be offered for a proper purpose, such as to demonstrate that he or she had knowledge or acted with a common scheme or plan. See MRE 404(b). " 'Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence.' " *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (citation omitted). As discussed in *People v Sabin (After Remand)*, 463 Mich 43, 63, 65-66; 614 NW2d 888 (2000) (citation omitted), to prove the existence of a common plan between a charged act and an uncharged act, "the necessary degree of similarity is greater than that needed to prove intent, but less than that needed to prove identity." Specifically:

> To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual . . . . [E]vidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts. Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. [*Id.* at 65-66 (citation omitted).]

In this instance, the uncharged crimes involving three separate, previous fires and claims for insurance by Johnson and Darryl demonstrate a common plan or scheme consistent with admissibility pursuant to MRE 404(b). In the prior uncharged acts, as well as the current situation, an insurance claim was submitted as the result of a fire. In two of the prior incidents, as well as in this case, insurance was procured for personal property in the dwellings approximately one month before a fire occurred. In all three prior instances, as well as in this case, there was a concurrent or immediately preceding theft in addition to the damages asserted from the fires. In each situation, the homes were not occupied at the time the fires originated. All of the fires were suggestive of arson or of a suspicious origin. There was an odor of gasoline detected at two of the previous fires and at the Devonshire property. In addition, at least two of the properties were owned by Floyd or her sister, Dana Floyd, and rented to family members before the fires occurred. Thus, there was evidence of a common scheme or plan to set fires in order to submit claims on insured personal property. See MRE 404(b). Additionally, the evidence was relevant because it was probative of intent, motive, plan, or design. See MRE 401. Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The evidence regarding the prior fires was highly relevant to the issue whether defendants committed arson in this case. See MRE 403; MRE 404(b). Additionally, the danger of *unfair* prejudice was minimal in light of the fact that there was a bench trial. See *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006) ("In a bench trial, the trial court is presumed to know the applicable law."). Thus, admission of the evidence was proper because the similarities between the prior fires and the fires in this case demonstrate a common plan, scheme, or system. See MRE 404(b).

Contrary to Johnson's arguments, the prior bad acts evidence submitted regarding the earlier fires involving Darryl were admissible at trial since they also pertained to her. MRE

404(b)(1) is applicable to the admissibility of evidence of other acts of any person. *People v Rockwell*, 188 Mich App 405, 409-410; 470 NW2d 673 (1991). In this case, Darryl is Johnson's son and they, along with Floyd, were charged with conspiracy, MCL 750.157a, in this matter.[2] The mere fact that Johnson, Floyd, and Darryl were found to be not guilty on the various conspiracy charges is irrelevant to the probative value of the evidence at the time the conspiracy charges were pending. Furthermore, as discussed above, the circumstances surrounding the prior fires involving Darryl were similar to the circumstances surrounding the prior fire involving Johnson and the fires that occurred in this case. Thus, the court did not err in admitting the other acts evidence related to Darryl.

Johnson further asserts the trial court erred in determining that evidence pertaining to the prior fires was admissible in accordance with the "doctrine of chances." As explained in *People v Mardlin*, 487 Mich 609, 616-617; 790 NW2d 607 (2010):

The doctrine of chances—also known as the "doctrine of objective improbability"—is a " 'theory of logical relevance [that] does not depend on a character inference.' " Under this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes. The doctrine is commonly discussed in cases addressing MRE 404(b) because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency. If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. [Citations omitted.]

Hence, "[t]he doctrine of chances is often similarly employed in cases alleging arson to argue that the fire at issue was not an accident, but was intentionally caused by the defendant. Indeed, arguably the doctrine is epitomized in arson cases in which apparently accidental fires befall property linked to the defendant with uncommon frequency." *Id.* at 618-619.

The trial court did not err in considering the doctrine of chances with regard to the admissibility of the prior fires in this case. "[T]he very function of the doctrine of chances is to permit the introduction of events that might appear accidental in isolation, but that suggest human design when viewed in aggregate." *Mardlin*, 487 Mich at 625. Thus, the evidence was admissible in this case in order for the prosecution to argue that the fires were not the result of an accident because of the unusual frequency of the earlier fires of property linked to Johnson or Darryl. See *id.* at 618-619. The evidence was particularly relevant with regard to the issue of intent. As noted by the *Mardlin* Court:

---

[2] Johnson and Floyd were acquitted of conspiracy to commit arson of an insured dwelling, while Darryl was acquitted of conspiracy to commit second-degree arson.

[P]recedent examining MRE 404(b) and the doctrine of chances clearly establishes that unusually frequent events—and *particularly* purported accidents—associated with the defendant and falling into the same general category of incidents are admissible to disprove lack of accident or innocent intent with regard to the charged event. Such evidence is particularly useful in arson cases where unusually frequent individual fires, which could appear to be accidents when viewed in isolation, may constitute the most probative objective evidence that the defendant intentionally set the fire underlying the arson charge. [*Id.* at 629.]

Thus, the fact that there were unusually frequent individual fires was probative, objective evidence that Johnson intentionally set the fire in this case. See *id.* Therefore, Johnson's assertion of error regarding the admissibility of the challenged evidence is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Johnson asserts that there was insufficient evidence to support her convictions of arson of an insured dwelling and second-degree arson. Specifically, Johnson argues that there was a lack of evidence to support the conclusion that the house fires were the result of arson and that there was a lack of evidence establishing that she committed the offenses. We disagree.

As discussed by this Court in *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012):

This Court reviews de novo challenges to the sufficiency of the evidence to determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. This Court resolves all conflicts regarding the evidence in favor of the prosecution, and [c]ircumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime. [Citations and quotation marks omitted; alteration in original.]

The crime of arson of an insured dwelling is codified in MCL 750.76, in relevant part, as follows:

(1) A person who willfully or maliciously burns, damages, or destroys by fire or explosive any of the following or the contents of any of the following is guilty of arson of insured property:

(a) Any dwelling that is insured against loss from fire or explosion if the person caused the fire or explosion with the intent to defraud the insurer.

In turn, MCL 750.73 defines the crime of second-degree arson as follows:

(1) Except as provided in [MCL 750.72], a person who willfully or maliciously burns, damages, or destroys by fire or explosive a dwelling, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents, is guilty of second degree arson.

(2) Subsection (1) applies regardless of whether the person owns the dwelling or its contents.

The Michigan Supreme Court explained the meaning of the phrase "willfully and maliciously" in the context of discussing common-law arson as follows:

To establish that a defendant acted wilfully or maliciously and voluntarily, the prosecution must prove one of the following: 1) that the defendant intended to do the physical act constituting the actus reus of arson, i.e., starting a fire or doing an act that results in the starting of a fire (intentional arson); or 2) that the defendant intentionally committed an act that created a very high risk of burning a dwelling house, and that, while committing the act, the defendant knew of the risk and disregarded it (wanton arson). [*People v Nowack*, 462 Mich 392, 406; 614 NW2d 78 (2000).]

Identity is an element of every offense, and a defendant's identity as the perpetrator of a crime may be proven through circumstantial evidence. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008); *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

Johnson's claim regarding the lack of sufficient evidence to sustain her convictions for these crimes is without merit. Proofs at trial included Johnson's acknowledgement and evidence that she maintained rental insurance for the personal property and contents of the Devonshire residence. Evidence was submitted to denote that Johnson filed a claim with the insurer to obtain reimbursement for damages incurred due to an alleged earlier theft and the fires, exceeding the limits of the policy. Testimony was elicited from fire personnel and experts indicating that the stairway fire in the home was the result of arson given the odor of gasoline, the unusual burn pattern, and the absence of any mechanical or electrical explanation for the fire. Although the witnesses providing testimony regarding the events and response to the fire did not personally check the basement of the home, William Belser, of the Detroit Fire Department, indicated that he observed other responders in the basement and further refuted any suggestion that the fire could have originated in that location. Similarly, Brian Rentz and Captain Mark Kossarek testified that, while they did not personally inspect the basement of the home, protocol required one of the responders to check the area.

Evidence pertaining to the second fire in the back bedroom of the home further indicated a lack of any explanation for its origin other than an intentional setting. Testimony established that the second fire was separate and independent from the stairway fire due to the absence of any trail or indication to link the two events. Use of the thermal imaging camera following the stairway fire further suggests that the two fires are unrelated. Testimony indicated that personal items, such as photographs, had been removed from the premises hours before the fires occurred, suggesting a "red flag" for fire investigators. Thus, there was ample evidence indicating that the fires were set willfully and maliciously. Undisputed evidence was adduced proving the existence of insurance on the contents of Devonshire, and the occurrence of two fires at that location at separate and unrelated areas of the home within a short span of time. The destruction that occurred to the structure and its contents, the odor of gasoline associated with the stairway fire, and the inability to locate an alternative explanation for the origin of the fires resulted in the investigators determining that the fires were incendiary or purposefully set due to human action.

-6-

In addition, there was ample evidence indicating that Johnson was involved in the arson. One of Johnson's neighbors saw Johnson's vehicle outside of 9197 Devonshire between the times of the two fires. Another neighbor witnessed Johnson and Darryl drive up to the home and park in the driveway. Darryl went toward the back of the house and Johnson went toward the front door. Johnson and Darryl started yelling. They returned to their vehicle and drove down the street. They parked in a driveway down the street. Soon after, the neighbor saw fire coming from the home and heard sirens. The vehicle left when the fire department arrived. Further, Floyd's second statement to investigators indicated an intention by Johnson and Darryl to set a fire at an indeterminate time. Thus, there was sufficient evidence to identify Johnson as a perpetrator of the crime. Therefore, Johnson's arguments regarding the sufficiency of the evidence fail.

Johnson's assertion that the cellular telephone records are exculpatory is unavailing. While some of the cellular telephone records place her telephone at the drive-in movie theater for a time, the same records demonstrate that her cellular telephone was positioned near the Devonshire address during the early morning hours on the day of the incident. Thus, the cellular telephone records do not preclude the possibility that Johnson was involved in the incident. In addition, as discussed above, neighbors testified to seeing Johnson and Darryl, as well as Johnson's car, at the home between the times of the two fires. Johnson's contention that the individuals providing the testimony were not credible is unavailing because, "[a]s [the] finder of fact, the trial court was charged with making credibility determinations, and [there is] nothing in the record to suggest that the court clearly erred in its findings." *People v McCray*, 245 Mich App 631, 640; 630 NW2d 633 (2001).


## III. COMPETENCY EXAMINATION

Floyd first contends the trial court erred in not assuring the effectuation of its order for her submission to a competency examination. She further asserts her trial counsel was ineffective for not obtaining an independent examination or persuading the trial court to secure Floyd's adherence to the order. We disagree.

In general, an issue must be raised, addressed, and decided by the trial court to properly preserve the issue for appellate review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). The record indicates that Floyd's attorney requested a competency examination and that a competency examination was ordered. Two court-ordered examinations were scheduled with the Center for Forensic Psychiatry. However, Floyd never appeared for the scheduled competency examinations. The trial court withdrew the order, and Floyd's attorney did not object. Thus, the contention of error for the failure of the trial court to assure the effectuation of such an order is not preserved for appellate review since Floyd's attorney did not challenge the court's decision in the trial court. Therefore, we review the issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 761-767; 597 NW2d 130 (1999).

To preserve a claim asserting the ineffective assistance of counsel, a defendant must move for a new trial or for a *Ginther*[3] hearing. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Because Floyd did not seek a motion for a new trial or *Ginther* hearing, the issue is also not properly preserved for appellate review. See *id*.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. A finding is deemed to be clearly erroneous if " 'the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *Lopez*, 305 Mich App at 693 (citation omitted). " 'Where claims of ineffective assistance of counsel have not been preserved, [this Court's] review is limited to errors apparent on the record.' " *Id*. (citation omitted).

As discussed in *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014):

> Although the determination of a defendant's competence is within the trial court's discretion, a trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence. However, the decision as to the existence of a "bona fide doubt" will only be reversed where there is an abuse of discretion. [Citation omitted.]

" '[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.' " *Id*. (citation omitted; alteration in original). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v Missouri*, 420 US 162, 172; 95 S Ct 896; 43 L Ed 2d 103 (1975), citing *Pate v Robinson*, 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966). To protect the rights of criminal defendants to due process, Michigan has enacted MCL 330.2020(1), which provides:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

"The issue of incompetence to stand trial may be raised by the defense, court, or prosecution." MCL 330.2024. "A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

On a showing that the defendant may be incompetent to stand trial, the court must order the defendant to undergo an examination by a certified or licensed examiner of the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial. [MCR 6.125(C)(1); see also MCL 330.2026(1).]

MCR 6.125(C)(2) explains that "[t]he defendant *must* appear for the examination as required by the court." (Emphasis added.) MCR 6.125(C)(4) provides that "[t]he court *may* order commitment to a diagnostic facility for examination if the defendant fails to appear for the examination as required or if commitment is necessary for the performance of the examination." (Emphasis added.)

During a December 13, 2013 pretrial hearing, Floyd's attorney requested a competency examination on the basis that Floyd suffered from mental retardation. The court referred Floyd for a competency examination. The corresponding order provided, in part:

If the defendant is on bond, s/he shall appear for examination at the places and times established by the examining facility. If the defendant, after being notified, fails to appear for examination, the court *may* order detention at a diagnostic facility for examination without hearing. This detention shall end upon completion of the examination. [Emphasis added.]

During the January 31, 2014 pretrial hearing, defense counsel noted that Floyd failed to appear for the competency examination. The court stated that the competency issue was required to be addressed within two weeks of the calendar conference in accordance with the pretrial order, and defense counsel agreed. The court determined that the issue of Floyd's competency was waived. Floyd's attorney responded to the trial court's statement that the issue was waived by stating, "Okay, thank you."

Floyd fails to show that the trial court erred in ruling that the issue of her competency to stand trial was waived. The trial court found that there was a bona fide doubt regarding whether Floyd was incompetent to stand trial. See *Kammeraad*, 307 Mich App at 138. The court properly ordered Floyd to undergo a psychiatric examination, which is required by statute and court rule. MCL 330.2026(1); MCR 6.125(C)(1). The burden was then on Floyd to appear for the examination as required by the court. See MCL 330.2026(1); MCR 6.125(C)(2). When Floyd failed to appear, the court had the discretion to commit Floyd to a diagnostic facility, but was not required to do so. See MCR 6.125(C)(4); MCL 330.2026(1). Floyd fails to show that the trial court erred by withdrawing the order for a competency evaluation. Instead, the trial court properly exercised its discretion in declining to commit Floyd to a diagnostic facility for examination after Floyd failed to appear for two scheduled examinations. See MCL 330.2026(1); MCR 6.125(C)(4). Accordingly, Floyd fails to show plain error. See *Carines*, 460 Mich at 763.

Floyd further contends her trial counsel was ineffective for failing to assure the effectuation of the trial court's order to undergo a competency examination or for failing to secure an independent examination for Floyd. Effective assistance of counsel is presumed.

*People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

> The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did. [*People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288, 306 (2012) (citations and quotation marks omitted).]

In order to demonstrate prejudice a defendant is required to demonstrate the existence of " ' a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 671 (citation omitted).

Counsel was able to secure a competency examination for Floyd. Floyd failed to appear or participate, despite rescheduling. Floyd does not assert that counsel failed to encourage her attendance and cooperation or that counsel could have physically compelled her participation. In asserting that counsel was ineffective for failing to secure an independent competency examination, Floyd effectively ignores the absence of evidence to suggest that she would have been any more compliant for an independent examination than she was with regard to a court-ordered examination. Defense counsel is not required to make a meritless objection or request. See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

## V. COURT COSTS AND RESTITUTION

Floyd next argues that the court erred in entering the award of $7,058.95 in restitution to Allstate for costs incurred in investigating the fires and claims pertaining to these convictions. We disagree.

We first note that Floyd has waived any issue regarding the amount of restitution awarded premised on her attorney's affirmative approval. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011) (recognizing that "express and unequivocal indications" of approval at trial constitute waiver of a claim). In this case, Floyd's attorney stated on the record that there was no objection to the amount of the restitution. Thus, Floyd's attorney made an express and unequivocal indication that he approved of the restitution award. See *id*. Regardless, even assuming that the issue was not waived and that Floyd merely forfeited the issue, the trial court did not err in awarding $7,058.95 in restitution to Allstate. We review an unpreserved issue regarding the trial court's restitution award for plain error affecting defendant's substantial rights. *People v Gaines*, 306 Mich App 289, 322; 856 NW2d 222 (2014).

As recognized by this Court in *People v Fawaz*, 299 Mich App 55, 64; 829 NW2d 259 (2012), "The [Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*] governs restitution to crime victims." The CVRA defines a "victim" as "an individual who suffers direct or threatened

physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1). The definition of "victim" in this case also includes "[a] sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime." MCL 780.766(1). In *People v Allen*, 295 Mich App 277, 278-279, 282-283; 813 NW2d 806 (2011), this Court held that the trial court did not clearly err in ordering the defendant to pay restitution to Blue Cross Blue Shield of Michigan for the hours spent by an employee of the company investigating the defendant's fraud since Blue Cross suffered a "loss of time that amounted to a direct financial harm."

Similarly, in this case, Allstate was a victim under the definition in MCL 760.766(1) because it suffered a loss of time amounting to direct financial harm when it investigated the fires. See MCL 780.766(1). Notably, in accordance with the CVRA, restitution is mandatory and not discretionary. Specifically:

> [W]hen sentencing a defendant convicted of a crime, the court *shall* order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. [MCL 780.766(2) (emphasis added).]

There is no demonstrated error pertaining to the amount of the award. The trial court's initial reluctance to award restitution is notable and relevant, indicating the need for the parties to stipulate to the amount for compensation. The amount awarded in this case conforms to the mandate requiring the prosecution to assume the burden of establishing the proper amount for a restitution award. See *Fawaz*, 299 Mich App at 65. " 'The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim. . . .' " *Id*. The lower court file demonstrates the prosecution's compliance with the statutory requirements, based on the submission of a motion and documents to support the award. "[W]ith the Victims Right's [sic] Act, the Legislature plainly intended to shift the burden of losses arising from criminal conduct—as much as practicable—from crime victims to the perpetrators of the crimes; thus, it is 'remedial in character and should be liberally construed to effectuate its intent.' " *Allen*, 295 Mich App at 282 (citation omitted). Because Floyd does not contest the amount of the restitution award, or assert the absence of proofs to substantiate the amount awarded, she fails to assert a meritorious claim of error.

To the extent that Floyd contends that her counsel was ineffective for stipulating to the award of restitution, such a claim is without merit. Based on a determination that restitution was appropriate in the circumstances of this case and that documentation was provided to verify the expenses incurred by Allstate due to the crimes charged, counsel cannot be deemed ineffective for failing to object based on futility. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## VI. COURT COSTS

Floyd next challenges the trial court's award of court costs, citing to *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), superseded by statute as stated in *People v*

*Konopka (On Remand)*, 309 Mich App 345; 869 NW2d 651 (2015).  We disagree that the trial court erred in imposing the court costs, but remand the case to the trial court for a determination of the factual basis for the court costs imposed on Floyd.

A defendant preserves a challenge to the trial court's imposition of court costs by objecting at the time that the trial court orders payment of court costs.  See *Konopka (On Remand)*, 309 Mich App at 356.  Because Floyd did not challenge the trial court's imposition of court costs before the trial court, this issue is not preserved, and our review is limited to plain error affecting Floyd's substantial rights.  See *id*.

Floyd contends, in accordance with *Cunningham*, that the trial court lacked the authorization to assess $600 in court costs.  The issue pertaining to the award of court costs was raised before this Court issued its decision in *Konopka*, and after the effective date of the amendment of MCL 769.1k(1), which provides, in relevant part:

> (b) The court may impose any or all of the following:

> (*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*iii*) Until 36 months after the date the amendatory act that added subsection (7) is enacted into law, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

> (A) Salaries and benefits for relevant court personnel.

> (B) Goods and services necessary for the operation of the court.

> (C) Necessary expenses for the operation and maintenance of court buildings and facilities.

> (*iv*) The expenses of providing legal assistance to the defendant.

> (*v*) Any assessment authorized by law.

> (*vi*) Reimbursement under section 1f of this chapter.

As recognized by this Court, the amended version of the statute became effective on October 17, 2014, and applies to all fines, costs, and assessments under MCL 769.1k before June 18, 2014, and after the effective date of the amendatory act.  *Konopka (On Remand)*, 309 Mich App at 357.  "The amended act was a curative measure to address the authority of courts to impose costs under MCL 769.1k before *Cunningham* was issued."  *Id*.  Based on the amended statutory

-12-

provisions, MCL 769.1k(1)(b)(*iii*) allows for an award of costs that "are *not* independently authorized by the statute for the sentencing offense." *Id.* Thus, the trial court had the authority to impose court costs under the amended statute since Floyd was sentenced before June 18, 2014. See *id*. at 359.[4] However, it is unclear from the lower court record whether the court costs imposed were reasonably related to the actual costs that the trial court incurred because the trial court did not state the factual basis for the court costs imposed See *id*. at 359-360. Therefore, remand is necessary in order for the trial court to establish the factual basis for the court costs imposed. See *id*.

We affirm defendants' convictions and sentences, but remand the case in Docket No. 324610 for a determination of the factual basis for the court costs imposed on Floyd. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher

---

[4] Floyd also argues that MCL 769.1k(1)(b)(*iii*) violates the Ex Post Facto Clauses of the United States and Michigan Constitutions. However, this Court rejected the argument that MCL 769.1k(1)(b)(*iii*) constitutes an ex post facto punishment in *Konopka. Konopka (On Remand)*, 309 Mich App at 370-376.