*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PARIS JAVON SMITH,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2019

No. 336122
Wayne Circuit Court
LC No. 15-008496-01-FC

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant, Paris Javon Smith, appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to commit murder, MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced Smith as a fourth-offense habitual offender, MCL 769.12, to life in prison without parole for the first-degree murder conviction, 15 to 30 years for the assault conviction, 5 to 15 years for the felon-in-possession conviction, and a consecutive five-year prison term for the felony-firearm conviction. We remand to the trial court for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), limited to the sole issue of whether Smith was deprived the effective assistance of counsel based upon defense counsel's failure to investigate and present expert testimony at Smith's trial. We affirm in all other respects.

Smith's convictions arise from the shooting of Donzell Simmons and Antaun Williams in Detroit on April 25, 2014. At trial, Williams testified that after he and Simmons picked up Smith at a convenience store and drove to a residential area, Smith shot Simmons in the head, killing him instantly, and shot Williams in the leg. The prosecution also presented the testimony of witnesses who identified Smith in surveillance footage from the convenience store and evidence that the bullets removed from both victims were fired from the same firearm. Smith was apprehended approximately a year and a half later, after he had purportedly changed his name and moved out of the state. Smith did not testify at trial, but the defense theory was that Williams or another person killed Simmons.

## I. SMITH'S BRIEF ON APPEAL

In his brief on appeal, Smith argues that he was denied a fair trial by the prosecutor's improper comments and arguments and that defense counsel's failure to object to those comments and arguments constituted ineffective assistance of counsel. We disagree.

"[A] defendant must contemporaneously object and request a curative instruction to preserve an issue of misconduct for appellate review." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (quotation marks and citation omitted; alteration in original). Smith failed to preserve his claims of prosecutorial misconduct by timely and specifically objecting below. *Id.*; *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). To preserve a claim of ineffective assistance of counsel, the defendant must move for a new trial or evidentiary hearing before the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Smith has filed several motions with this Court seeking a remand for an evidentiary hearing, but those motions were denied.

"Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Brown*, 294 Mich App at 382. "Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. This Court reviews findings of fact for clear error and questions of law de novo." *Heft*, 299 Mich App at 80 (quotation marks and citations omitted). Because no evidentiary hearing has yet been held to develop Smith's claim of ineffective assistance of counsel, "our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### A. PROSECUTORIAL ERROR[1]

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Brown*, 294 Mich App at 382-383. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). However, the prosecutor is free to "argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Furthermore, as stated by this Court in *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004):

---

[1] As recognized by this Court in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), while the phrase "prosecutorial misconduct" is used as a term of art in criminal appeals, it is a misnomer when used to describe technical or inadvertent errors that do not involve illegal conduct or other activity violating the rules of professional conduct. Allegations of less extreme error—i.e., error that would not warrant discipline under the rules of professional conduct—are more accurately described as claims of "prosecutorial error." *Id.* We do not imply by our use of the commonly accepted phrase "prosecutorial misconduct" throughout this opinion that the claimed errors rise to the level of professional misconduct.

[A] prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness. But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes. [Citations omitted.]

Smith argues that the prosecutor's characterization of Williams as having been "forthright" to an investigating police officer constituted improper vouching for the credibility of a witness. During her opening statement, the prosecutor explained that the Detroit police arrived at the scene of Simmons's body, but did not know what had happened. The prosecutor then stated that "because [Williams] had been forthright and told Redford [police] . . . what happened, Redford realize[d] that the shooting scene [was] back in Detroit." Contrary to Smith's argument, it does not appear that the prosecutor used the term "forthright" in order to imply that Williams was being honest or truthful. Forthright means "free from ambiguity or evasiveness," or "going straight to the point." *Merriam-Webster's Collegiate Dictionary* (11th ed). Given the context, it appears that the prosecutor was merely stating that Williams spoke up immediately and told the Redford police that the crime had occurred in Detroit, which allowed the police to connect the two victims. This was consistent with the prosecutor's remarks in closing argument that the Redford police said that Williams was "cooperative." This fact was also supported by the evidence admitted at trial, including the testimony of police officer Emily Gajeski, who testified that Williams was "extremely disoriented," but said that he had been at a liquor store on Outer Drive. Thus, the prosecutor's statement was not improper.

Furthermore, to the extent that the prosecutor's use of the term "forthright" could be interpreted as indicating that Williams had been honest with the police, the prosecutor did not imply that she had any special knowledge of Williams's truthfulness. See *Thomas*, 260 Mich App at 455. Rather, she was merely explaining how the police investigation proceeded. In addition, any prejudice could have been alleviated by a curative instruction, had one been requested. *Id*. Indeed, even without a request, the trial court instructed the jury that "[t]he lawyer's statements and arguments are not evidence." We presume that jurors follow their instructions. *Unger*, 278 Mich App at 235. For these reasons, Smith fails to establish that the prosecutor's statement constituted plain error affecting his substantial rights.

Smith also argues that the prosecutor improperly objected during Williams's testimony regarding the surveillance footage. Williams testified that Simmons got out of the truck at the convenience store and retrieved a box from the back of the truck. Based on Simmons's comments when he subsequently handed the box to Smith, Williams believed the box contained drugs. During cross-examination, defense counsel played the surveillance footage and instructed Williams to "[t]ell us to stop when you see Donzell Simmons get out," and the prosecutor objected, stating: "People are not visible in the video. . . . None of the three people are visible[.]" Williams then clarified that, although it was impossible to see in the video, he was telling them what had happened. Smith argues that the prosecutor, in effect, gave unsworn testimony and minimized the effect of "what might otherwise have fairly been a devastating blow to Williams' credibility." According to Smith, Williams's testimony that Simmons got out of the truck was not supported by the video and, by stating that no one was visible in the video, the prosecutor weakened the effect of Williams's inaccurate testimony before the jury. Williams admitted, however, that the video did not show Simmons exiting the truck and, instead, Williams

-3-

implied that he was testifying about what had happened from his memory. Therefore, Smith fails to establish that the prosecutor's statement, even if improper, prejudiced him.[2]

Next, Smith argues that the prosecutor's characterization of Williams as "courageous" constituted improper vouching for his credibility. During her closing argument, the prosecutor argued that it was "courageous" for Williams to testify in front of the person who almost killed him. Even if the statement could be interpreted as implying that Williams was being truthful, again, the prosecutor did not imply that she had any special knowledge. Furthermore, the prosecutor was allowed to comment on the credibility of her witness in closing where, as here, there was conflicting evidence and Smith's guilt depended on whether the jury believed Williams. *Thomas*, 260 Mich App at 455. At any rate, any prejudice was alleviated when the trial court instructed the jury that "[t]he lawyer's statements and arguments are not evidence." *Unger*, 278 Mich App at 235; *Thomas*, 260 Mich App at 455. Thus, Smith fails to establish plain error affecting his substantial rights with regard to the prosecutor's argument.

Lastly, Smith argues that the prosecutor inaccurately argued in closing that Smith deactivated his cell phone service the same day he provided the phone number to the police. Contrary to Smith's assertion, this argument was supported by the evidence presented at trial. Lieutenant Michael McGinnis testified that he was informed by the service provider that the phone number had been "suspended at the subscriber's request" on September 7, 2015, which was the same day that Smith had provided that phone number to the police. Because the prosecutor's argument was supported by the evidence, it was not improper.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Smith also argues that defense counsel was ineffective for failing to object to each of these alleged instances of prosecutorial misconduct. As stated by this Court in *Heft*, 299 Mich App at 80-81:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [Citations omitted.]

Defense counsel's failure to object to the prosecutor's use of the term "forthright" in her opening statement, use of the term "courageous" in her closing argument, and argument that Smith terminated his cell phone serve the same day he provided the phone number to the police was not ineffective because none of these instances involved improper conduct on the part of the prosecutor. "Trial counsel is not ineffective for failing to advocate for a meritless position."

---

[2] Moreover, the jurors viewed the video several times and were able to determine for themselves whether Williams's testimony conflicted with the surveillance footage.

*Payne*, 285 Mich App at 191. Moreover, for the reasons discussed above, Smith fails to establish that he was prejudiced by the failure to object to any of these comments, objections, or arguments.

## II.  SMITH'S STANDARD 4 BRIEF

Smith also raises several issues in a pro se brief filed pursuant to Administrative Order 2004-6, Standard 4.

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

First, Smith raises several additional claims of ineffective assistance of counsel. Because Smith failed to raise these claims in a motion for a new trial or an evidentiary hearing in the trial court, our review "is limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80. As stated earlier, to prove ineffective assistance of counsel, Smith must show "that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Id*. at 80-81.

## 1.  FAILURE TO STRIKE JUROR

Smith argues that defense counsel was ineffective for failing to strike an allegedly biased juror. We disagree. "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (opinion by O'CONNELL, J.) (citations omitted). In *Unger*, 278 Mich App at 258, this Court explained:

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror.
>
> A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury. . . . On the basis of his experience, lead trial counsel surely believed that he had attained a reasonable, fair, and honest jury. We will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance. [Quotation marks and citations omitted.]

During voir dire, Juror No. 8 stated that her son had been murdered and that the person or persons responsible were never found. The trial court asked Juror No. 8 whether her son's murder would affect her ability to be fair and impartial in this case, which also involved an allegation of murder. She equivocally answered, "I would hope this would not. I don't know." The trial court then asked Juror No. 8 if she would be able to put what happened to her son aside, listen to the testimony and evidence in this case, and make a decision based only on what she heard in the courtroom, and she answered, "Yes, I think so." In response to an inquiry by the

prosecutor, Juror No. 8 also indicated that she believed the Detroit police could have done a better job investigating her son's murder.

Smith argues that defense counsel should have struck Juror No. 8 after she stated that she did not know if she could be fair and impartial. Smith fails to overcome the presumption that defense counsel exercised sound trial strategy. While Smith emphasizes that Juror No. 8 said, "I think so," she actually responded, "*Yes*, I think so" (emphasis added), when asked whether she could put her son's murder aside and listen to the evidence. Thus, while she initially stated that she did not know if she could be fair and impartial, her subsequent response definitively indicated that she could be impartial and that she could decide this case based solely on the evidence presented. Moreover, defense counsel could have believed that it was sound trial strategy to retain Juror No. 8 as a juror given her dissatisfaction with the investigation conducted by the police with respect to her son's murder. We will not substitute our judgment for that of defense counsel or use the benefit of hindsight to assess counsel's performance. *Id*.

## 2. FAILURE TO REQUEST A LIMITING INSTRUCTION

Smith next argues that defense counsel was ineffective for failing to request a limiting instruction regarding his prior felony conviction. We disagree.

The parties stipulated that on the date of the offenses at issue, Smith "was not eligible to possess a firearm, because he had previously been convicted of a specified felony and his right to possess a firearm had not been restored pursuant to Michigan law." In its final instructions to the jury, the trial court stated, "In this case, as to Count III, weapons, firearm possession by a felon, People's Exhibit 67, the parties stipulated to that fact." Smith argues that defense counsel should have requested that the jury be further instructed that it could only use his prior conviction for the limited purpose of determining whether he was guilty of the felon-in-possession charge.

A decision to stipulate and not request a limiting instruction is generally a matter of trial strategy. See *People v Rice (On Remand)*, 235 Mich App 429, 444-445; 597 NW2d 843 (1999). Defense counsel reasonably may not have wanted to reemphasize Smith's prior conviction by requesting a limiting instruction. Moreover, Smith fails to establish prejudice because, although the trial court did not expressly provide a limiting instruction, its instruction to the jury, in effect, limited the use of the stipulation to "Count III," i.e., the felon-in-possession charge. Finally, given that there was no argument for improper use of the prior conviction, Smith fails to establish a reasonable probability that the outcome of the trial would have been different had defense counsel requested a limiting instruction.

## 3. FAILURE TO INVESTIGATE EXPERTS

Smith also argues that defense counsel was ineffective by failing to obtain and present at trial the testimony of two expert witnesses. For the reasons discussed below, we remand to the trial court so that it may hold an evidentiary hearing for further development of this issue.

In support of his motion to remand, Smith submitted reports from two experts. He also submitted his own affidavit, stating that he would testify that defense counsel agreed that a video forensic expert and accident reconstruction expert might be helpful, but that counsel did not believe that the trial court would grant funds for these experts. This Court previously denied the

motion to remand "without prejudice to a case call panel of this Court determining that remand is necessary . . . ." *People v Smith*, unpublished order of the Court of Appeals, entered January 18, 2019 (Docket No. 336122).

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy," and "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Payne*, 285 Mich App at 190 (quotation marks and citations omitted). The reports from both experts indicate that they would have provided testimony favorable to the defense in this case.

First, Smith submitted the report of audio and video forensic expert Edward Primeau. According to Primeau, he examined a disc containing two camera views and performed forensic video enhancement to determine whether the driver ever stepped out of the truck during the recording. He concluded "beyond a reasonable degree of scientific certainty that the driver's side door does not open, nor does the driver exit the vehicle on Camera 1."[3]

Smith also submitted the report of crime scene reconstruction expert Timothy D. Brown. Brown reviewed Williams's testimony and photographs of the truck in which Simmons and Williams were shot, and examined an exemplar of the truck involved for "dimensional detail." He concluded that it was "extremely unlikely" that "the crime could have been committed based on testimony of . . . Williams." Brown demonstrated the position that Williams testified that he was in when he was shot, i.e., lying face down on the floor behind the front seats. According to Brown, "in no way does the right rear portion of [Williams's] buttocks expose itself to be shot, by a front set occupant, with an 'upward' trajectory." Brown further opined that his attempt to reenact the events described by Williams showed "the unlikelihood of a shooter being able to position [himself] to allow the entry point and angle of the shot/injury described by Williams." Brown also reasoned that Williams's story was nearly impossible given the absence of blood matching Williams's DNA profile anywhere in the truck, that it would be nearly impossible for someone to climb over a person in the driver's seat in the manner Williams described, and that there was no evidence that a person disturbed the "pan of blood" in the center console, despite Williams's contention that he climbed into the front seat and then over Simmons's body. Brown concluded that "there exists a very strong likelihood that the series of events did not occur as described by the eyewitness."

With regard to Primeau's proposed testimony, we note that while Sergeant Lance Sullivan and Williams testified that Simmons could not be *seen on the video* getting out of the truck, Primeau would have apparently testified that the driver's side door never opened and Simmons, therefore, *did not* get out of the truck. If Primeau had definitively testified that Simmons did not get out of the truck, this would have more strongly rebutted Williams's version of events. Whether Simmons exited the truck at the convenience store was not an issue material to the elements of the crimes. Nonetheless, if Williams's recollection had been impeached in this regard, it might undermine the credibility of the only eyewitness to testify and the

---

[3] In the video provided by Smith, which he asserts was the video admitted at trial, three different camera angles are shown and are identified as "CH1," "CH6," and "CH7." "CH1" is the camera showing the outside parking lot.

prosecutor's theory that Simmons was shot in the course of a drug deal or robbery. Thus, Primeau's testimony may reasonably have provided Smith with a substantial defense, i.e., one that would have made a difference in the outcome of the trial, *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Brown would also have provided testimony that would have been favorable to the defense and that was not cumulative to evidence already presented at trial. In particular, there was no testimony presented at trial regarding the "near impossible task" of climbing over a person in the driver's seat or pointing out the fact that the pool of blood on the center console was not disturbed. Again, Brown may reasonably have provided Smith a substantial defense by significantly challenging Williams's credibility. *Id*.

In sum, Smith has identified an issue sought to be reviewed on appeal, shown that development of the factual record is required for appellate consideration of the issue, and supported his claims with offers of proof. See MCR 7.211(C)(1)(a). Smith's offers of proof[4] show that his experts would have presented testimony favorable to the defense and that defense counsel decided not to investigate such experts, even though she believed they might be helpful to the defense. Accordingly, we remand to the trial court with directions to conduct an evidentiary hearing and make appropriate findings regarding whether defense counsel's failure to investigate and present expert testimony at trial constituted ineffective assistance of counsel.

### 4. FAILURE TO PRESENT EVIDENCE

Smith also argues that he was denied the effective assistance of counsel and the right to present a defense by counsel's failure to move for the admission of the report from the blood technician. We disagree.

Brandon Good, a lab manager with the Michigan State Police Northville Crime Laboratory and an expert in DNA analysis and forensic biology, testified that the DNA profile from two suspected blood samples—obtained from the driver's seat and the rear bench seat of the truck—matched Simmons. He further testified that Williams was excluded as a donor to

---

[4] In addition to the reports from retained experts and his own affidavit, Smith submitted affidavits from two jurors regarding the effect the expert opinions may have had on their view of the case. In pertinent part, MRE 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. . . . *A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying*. [Emphasis added.]

Consequently, we will not consider the contents of the affidavits, nor should the trial court do so on remand.

those samples. During his testimony, Good referred to his report, but it was not admitted as an exhibit. Smith now argues that defense counsel should have moved to admit the report. However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy," *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and Smith has not adequately rebutted this presumption. Moreover, given Good's explanation of his findings, Smith fails to establish prejudice from the failure to admit a report that would have been cumulative of Good's testimony.

## B. PROSECUTORIAL ERROR

Smith next argues that the prosecutor committed misconduct and violated his due-process rights by failing to correct false testimony at trial. We disagree. Smith failed to preserve this claim of prosecutorial misconduct by timely and specifically objecting below. *Brown*, 294 Mich App at 382. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id.*

"[P]rosecutorial misconduct consisting of the knowing use of false evidence or perjured testimony violates a defendant's due process rights guaranteed by the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 395; 764 NW2d 285 (2009). "[I]t is inconsistent with due process when the prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears, even when the false testimony goes only to the credibility of the witness." *Id.* (quotation marks and citation omitted).

Smith argues that Williams falsely testified that Simmons got out of the truck at the convenience store to retrieve what Williams believed to be drugs. Smith relies on the report of his proposed expert witness, Primeau, who concluded that Simmons never got out of the truck. However, that report is not part of the record and there is no evidence that the prosecutor had such a report, which was produced after trial, or otherwise knew that Williams was testifying falsely. Williams testified that although it was impossible to see in the video, Simmons actually did get out of the truck. Smith fails to establish that the prosecutor had an obligation to "correct" Williams's testimony.

Smith also argues that Sergeant Kevin Wight, the officer in charge of this case, provided false testimony at trial. Wight testified regarding two women who lived on the street where the shooting occurred on the night in question. He testified that one of the women, Ms. Rockmore, was deceased and that the other woman, Ms. Driver, had moved to Florida. Smith, however, located Driver and called her as a witness at trial, where she testified that she moved to Walled Lake, not Florida. Smith also called Mario Brown-Zachery as a witness, and he testified that Rockmore, his godmother, was not deceased. Despite the testimony presented by the defense, there is no evidence that the prosecutor knew that Wight was testifying falsely. Furthermore, Smith fails to establish how the prosecutor's failure to correct Wight's testimony affected his substantial rights given the subsequent testimony of his witnesses.[5]

---

[5] At the end of Smith's Standard 4 brief, he argues that this Court should consider the cumulative effective of all of the instances of prosecutorial misconduct and ineffective assistance of counsel.

## C. JUDICIAL BIAS

Smith also argues that he was denied the right to be tried before a neutral and impartial decision-maker because the trial judge invaded the province of the jury and pierced the veil of judicial impartiality by endorsing and confirming Williams's in-court identification of Smith. We disagree.

Smith did not raise any claim of judicial misconduct in the trial court. Therefore, this issue is unpreserved. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, we review Smith's unpreserved claim of judicial misconduct for plain error affecting his substantial rights. *Jackson*, 292 Mich App at 597.

A defendant may be deprived a fair trial where the trial judge's conduct pierces the veil of judicial impartiality and, considering the totality of the circumstances, "it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 170-171. Smith challenges the in-court identification procedure that occurred at trial. During Williams's testimony, the prosecutor asked Williams if he saw the person Simmons picked up at the convenience store in the courtroom, and Williams said yes. The prosecutor asked Williams to describe what the person was wearing and Williams stated, "It appears to be a blue shirt, or whatnot, button up, or whatnot, charcoal slacks, I guess." The prosecutor indicated, for the record, that Williams identified Smith. The trial judge then asked Williams to point to the person he was referring to, and Williams motioned toward "that gentleman right there (indicating)." The trial judge stated, "No [sic: so] noted."

Smith claims that the trial judge invaded the province of the jury and pierced the veil of impartiality by validating, confirming, and endorsing that Williams had pointed to Smith. Smith, however, fails to establish that the trial judge's conduct was improper. The trial judge merely affirmed for the record that Williams had identified Smith. The judge's statement was not intended for the jury, which also observed Williams's in-court identification, but for those reviewing the record, who were not present in the courtroom when Williams described Smith's attire or pointed to Smith. By merely clarifying for the record that Williams had identified Smith, the trial judge was not expressing her own view regarding the accuracy or reliability of that identification. Thus, the judge did not invade the jury's province of deciding whether Smith was the shooter.

---

"[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). However, " 'cumulative error,' properly understood, actually refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error. Only the unfair prejudice of several *actual* errors can be aggregated to satisfy the standards set forth in *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999)." *Id*. at 591 n 12. For the reasons discussed earlier, Smith has failed to establish any unfair prejudice and, therefore, there is no unfair prejudice to accumulate. However, he is entitled to a remand for further development of one of his claims, as explained in Section II.A.3 of this opinion.

Smith also fails to establish that Williams did not identify him as the perpetrator and, thus, that the trial judge's affirmation was improper. Smith argues that Williams referred to a blue shirt, but the trial judge had stated earlier that same day to Smith, "I like the purple." It is not clear, however, that the trial judge was referring to Smith's shirt. Even if this were clear, however, the discrepancy between the judge calling Smith's shirt purple and Williams calling the shirt blue is not substantial; one of them could have been mistaken regarding the color. We further note that Williams appeared to express some uncertainty with his description of the color as blue, identifying "a blue shirt, or whatnot," and ending his description by stating, "I guess." Moreover, Williams's in-court identification was not limited to his description of Smith's clothing; he also pointed to Smith. Thus, Smith fails to establish a plain error affecting his substantial rights.

## D. PRETRIAL IDENTIFICATION PROCEDURE

Smith next argues that his due-process rights were violated by a pretrial identification procedure that was suggestive and unnecessary. We disagree.

Smith did not object to Williams's out-of-court identification below. Therefore, this issue is unpreserved, and our review is limited to determining whether Smith has demonstrated a plain error that affected his substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

In *People v Thomas*, 501 Mich 913, 913 (2017), our Supreme Court explained:

> Due process concerns arise when law enforcement officers use an identification procedure that is both suggestive and unnecessary. But a defendant's right to due process of law is not violated unless the photographic identification procedure is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification. A police officer showing a victim just a single photograph is one of the most suggestive photographic identification procedures that can be used. . . .

> The United States Supreme Court has held that reliability is the ultimate touchstone for admissibility of an identification. Accordingly, even an unnecessarily suggestive identification may be admitted if it is sufficiently reliable. [Quotation marks and citations omitted.]

In evaluating the likelihood of misidentification, courts consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *People v Kurylczyk*, 443 Mich 289, 306; 505 NW2d 528 (1993), impliedly overruled on other grounds by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004) (quotation marks and citation omitted).

In this case, Williams was shown only one photograph, obtained from the surveillance footage from the convenience store, and asked whether the person in the photograph was the shooter. The question is whether this identification, which was undoubtedly suggestive, was unreliable under the totality of the circumstances. *Thomas*, 501 Mich at 913. Williams had an

opportunity to see Smith at the time of the crime. Williams testified that he and Smith made eye contact for one or two seconds and, as they drove, Williams was "sitting and observing." He also testified that he was paying attention to the person in the passenger's seat because he did not know him. And although it was dark out and they drove in the truck for only a short time, from his vantage point in the back seat, Williams noticed a silver streak in Smith's hair. In addition, Williams appeared to be certain of his identification and the identification occurred only one day after the crime. On the other hand, Williams's initial description of the shooter, which he gave before viewing the photograph, was not very accurate. Williams described the shooter as dark-skinned, wearing a black hoodie, and having a goatee. However, upon viewing the video and still photographs at trial, Williams admitted that Smith did not have a goatee or dark skin, and that his hoodie could have been burgundy. Considering the totality of the circumstances, Smith has not clearly established that there was a substantial likelihood of misidentification. In particular, unlike in *Thomas*, *id.*, in which the victim only viewed the assailant for a matter of seconds on a dark street while a gun was pointed at him, Williams rode in a vehicle with Smith, looked him in the eye, and had the opportunity to notice a distinctive feature—the silver streak in his hair. Thus, even though the identification procedure was unnecessarily suggestive, we are unpersuaded that it was not sufficiently reliable.

Even if the identification procedure used was plainly erroneous, Smith fails to establish that any error affected his substantial rights. Williams identified the person in the photograph from the surveillance video as the person who got into the truck. On appeal, Smith does not dispute that he was the person who entered the truck.[6] Thus, any error in the identification procedure did not affect Smith's substantial rights. Smith also fails to show that any error "resulted in the conviction of an actually innocent defendant," or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks and citation omitted).

## E. EX PARTE COMMUNICATIONS WITH JURY

Finally, Smith argues that he was denied his Sixth Amendment right to be present at critical stages of the trial when the trial court responded to various jury notes in the absence of Smith and defense counsel. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). Smith did not object below to the trial court's handling of the notes from the jury. Therefore, this issue is unpreserved. "Unpreserved constitutional issues are reviewed for plain error that affected a defendant's substantial rights." *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004).

---

[6] In his affidavit, Smith admits that he "briefly met" with Simmons. Other witnesses also confirmed that Smith was the person in the video. The video follows Smith inside the store and then switches to an outside camera, from which Smith can be seen coming out of the store and getting into the passenger side of a pickup truck.

"A defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). "[T]he test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Armstrong*, 212 Mich App 121, 129; 536 NW2d 789 (1995).

With regard to ex parte communications with the jury, the Michigan Supreme Court has held that "before a reviewing court can make a determination regarding the prejudicial effect of an ex parte communication, it must first categorize the communication into one of three categories: substantive, administrative, or housekeeping." *People v France*, 436 Mich 138, 163; 461 NW2d 621 (1990). The Court explained:

Substantive communication encompasses supplemental instruction on the law given by the trial court to a deliberating jury. A substantive communication carries a presumption of prejudice in favor of the aggrieved party, regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an absence of prejudice.

Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication has no presumption of prejudice. The failure to object when made aware of the communication will be taken as evidence that the instruction was not prejudicial. Upon an objection, the burden lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect. . . .

Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice. [*Id*. at 163-164 (citations and footnote omitted).]

Before the jury's verdict was announced, the trial court discussed several notes that it had received from the jury during deliberations and explained how it addressed those notes. In the first note, the jury requested to watch the video again, and the trial court sent the video and a laptop into the jury room. In the second note, the jury asked how long it would be staying that day. The trial court did not indicate how it responded. In the next note, the jury asked to see the photographs from inside the truck and the trial court sent in several trial exhibits. In the next note, the jury asked to see the "record from the blood technician." The trial court responded that "[t]he report was not admitted in evidence." The jury next requested to break for lunch, to which the trial court responded, "Okay, please return at 1:30." In the next note, the jury asked what time the court closed, and the court responded that it closed at 4:30 p.m., but it would be

releasing the jury at 3:00 p.m. Lastly, the jury requested 11 copies of the jury instruction for the lesser offense of second-degree murder. The trial court did not indicate whether the requested copies were provided.

It is unclear whether Smith and defense counsel were present when the jury's notes were received and resolved, but there is no record of those proceedings, and the fact that the trial court provided a summary of what had occurred to the parties and counsel supports Smith's argument that he and defense counsel were not present. Nonetheless, contrary to Smith's suggestion, reversal is not automatic. Smith was not prejudiced by his absence or the ex parte communications with the jury.

Initially, we must characterize the communications as substantive, administrative, or housekeeping to determine which party has the burden of establishing prejudice. None of the communications at issue were substantive because they did not require any supplemental instructions. Several of the communications fall into the category of administrative communications, including the jury's requests for the video, photographs, report, and additional copies of an already-provided jury instruction. With regard to those communications, Smith's failure to object is evidence that there was no prejudicial effect. See *id*. at 163. The only specific prejudice alleged by Smith is with regard to the blood technician's report. He contends that he was deprived of the opportunity to have defense counsel and the prosecutor stipulate to the admission of the report due to defense counsel's absence. However, he has not established that the attorneys would, in fact, have stipulated to admission of a hearsay report or that the trial court would have agreed to reopen the proofs for that purpose. Thus, Smith has not established prejudice in this regard. Finally, with regard to the remainder of the communications, which can fairly be characterized as housekeeping communications, Smith fails to rebut the presumption of no prejudice.

## III. CONCLUSION

In sum, we remand this matter to the trial court with directions to conduct an evidentiary hearing and make appropriate findings regarding whether defense counsel's failure to investigate and present expert testimony at trial constituted ineffective assistance of counsel. We reject Smith's remaining claims of error.

Affirmed in part and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica

-14-

# Court of Appeals, State of Michigan

# ORDER

People of MI v Paris Javon Smith

Docket No.    336122

LC No.        15-008496-01-FC

Cynthia Diane Stephens
Presiding Judge

Michael F. Gadola

Anica Letica
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority until they are concluded. As stated in the accompanying opinion, the trial court is to conduct an evidentiary hearing and make appropriate findings regarding whether defense counsel's failure to investigate and present expert testimony at trial constituted ineffective assistance of counsel.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court a copy of any order entered on remand.

The trial court shall order a transcript of any hearing on remand to be prepared at public expense and filed within 21 days after completion of the proceedings.

In light of the Court's remand of this matter on formal submission, the Court further orders that defendant-appellant's motion for remand is DISMISSED AS MOOT.

/s/ Cynthia Diane Stephens

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 16, 2019
Date

Chief Clerk