PEOPLE v McCRAY

Docket No. 214701. Submitted October 12, 2000, at Detroit. Decided May
8, 2001, at 9:05 A.M.

Lorenzo McCray was convicted following a bench trial in the Wayne
Circuit Court, Timothy M. Kenny, J., of assault with intent to com-
mit murder, two counts of assault with intent to commit armed
robbery, and possession of a firearm during the commission of a
felony. Two police officers on patrol in a marked squad car had
observed an armed robber standing over two men lying face down
on the ground. Upon seeing the officers, the armed man ran to a
waiting automobile occupied by two men. As the officers chased
the automobile, the armed man jumped out of the passenger side of
the automobile and ran between two houses. That man eventually
shot and wounded the officer who chased him on foot. The critical
issue at trial was whether the defendant was the armed man or was
sitting in the backseat of the waiting automobile while the crimes
were being committed. The defendant appealed.

The Court of Appeals held:

1. The trial court did not abuse its discretion in admitting for
purposes of impeaching the defendant's credibility a notice of alibi
defense that was filed by the defendant and indicated that the
defendant was not at the scene of the crimes when the crimes were
committed. A notice of alibi, as a party-opponent admission under
MRE 801(d)(2)(C), may be used to impeach a defendant's credibil-
ity at trial when the defendant's testimony is inconsistent with the
alibi notice. In this case, the defendant's testimony at trial that he
was in the backseat of the waiting automobile when the crimes
were committed was inconsistent with the assertion in his alibi
notice.

2. The trial court did not abuse its discretion in denying the
defendant's motion for a new trial, the motion having been brought
on the asserted ground that the verdict was against the great
weight of the evidence because witness descriptions of the assail-
ant varied and did not fit the defendant. The discrepancies in
description do not preponderate so heavily against the verdict that
it would be a miscarriage of justice to let the verdict stand.

3. By not objecting at trial, the defendant forfeited his claim that the trial court erred in admitting evidence of the wounded officer's out-of-court identification of the defendant in a photographic lineup at which the defendant, because he was in custody, should have been, but was not, represented by counsel and in admitting evidence of the wounded officer's identification of the defendant at trial because that identification may have been influenced by the photographic lineup. In any event, the record indicates that the officer had a basis for the in-court identification independent of the photographic lineup, and that the trial court did not rely solely on the officer's identification of the defendant in finding the defendant guilty because it also considered other witnesses' description of the assailant. Likewise, because the defendant did not establish that there is a reasonable probability that, but for alleged error in defense counsel's failure to object to the admission of the officer's photographic and in-court identification of the defendant, the result of the proceedings would have been different, the defendant's claim of ineffective assistance of counsel must also fail.

4. The trial court abused its discretion in admitting a prosecution witness' prior consistent statement. The hearsay exception for prior consistent statements, MRE 801(d)(1)(B), does not apply to consistent statements that, like the statement involved in this case, are made after the motive to fabricate arises. The trial court's error, however, was harmless and does not require reversal of the defendant's convictions. The defendant did not establish that it is more probable than not that the error undermined the reliability of the verdict so as to make the error outcome determinative.

5. No merit lies in the defendant's claim that he was denied his right to a fair trial because the prosecution failed to reveal that it had offered leniency to one of the defendant's companions in exchange for testimony against the defendant. The claim was not preserved for appeal because the defendant made no inquiry at trial regarding an agreement between the witness and the prosecution. Furthermore, the defendant points to no record facts indicating an agreement or to any prejudice from the claimed nondisclosure.

6. The amended judgment of sentence incorrectly states that the defendant was convicted of three counts of assault with intent to commit murder and one count of felony-firearm. The case must be remanded for correction of the judgment of sentence.

Affirmed but remanded for correction of judgment of sentence.

1. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — ALIBI NOTICES.

A notice of alibi, as a party-opponent admission, may be used to impeach a defendant's credibility at trial when the defendant's testi-

mony is inconsistent with the alibi notice (MCL 768.20; MRE 801[d][2][C]).

2. CRIMINAL LAW — NEW TRIAL — VERDICT AGAINST GREAT WEIGHT OF EVIDENCE — APPEAL.

The Court of Appeals reviews for abuse of discretion a trial court's denial of a motion for a new trial that was brought on the ground that the verdict was against the great weight of the evidence; the test is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

3. EVIDENCE — HEARSAY — EXCEPTIONS — PRIOR CONSISTENT STATEMENTS.

An out-of-court statement made by a declarant after the motive to fabricate arises does not fall within the parameters of the hearsay exception regarding prior consistent statements offered to rebut an express or implied charge against the declarant of recent fabrication (MRE 801[d][1][B]).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training, and Appeals.

*Carl S. Christoph,* for the defendant on appeal.

Before: MARKEY, P.J., and MURPHY and COLLINS, JJ.

COLLINS, J. Following a bench trial, defendant was convicted of assault with intent to commit murder, MCL 750.83, two counts of assault with intent to commit armed robbery, MCL 750.89, and possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to twenty-five to fifty years' imprisonment for the conviction of assault with intent to commit murder, fifteen to thirty years' imprisonment for each of the convictions of assault with intent to commit armed robbery, and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm, but remand for correction of the amended judgment of sentence.

On December 28, 1997, Detroit Police Officers William Blake and Reginald Washington were patrolling the area of Joy and Epworth in a marked squad car. The officers saw two men lying face down on the ground and another man standing over them, holding a weapon. When the officers stopped and turned around, the assailant put his weapon in his pocket and ran to a waiting vehicle. The officers chased the vehicle until it stopped and the assailant jumped out of the passenger side and attempted to run between two houses. Blake pursued the assailant on foot. The assailant jumped over a fence and fell. When Blake jumped over the fence, the assailant got up, shot Blake in the right upper thigh, and then continued running.

Trial testimony revealed that defendant, along with Timothy Hobson and Terrance Hanson, was in the vehicle that fled from Blake and Washington, and that the vehicle was owned by Hobson's girlfriend. The critical issue at trial was whether defendant or Hobson was the assailant. Defendant acknowledged that he was present at the scene of the robbery attempt, but testified that he was in the back seat of the vehicle and that Hobson committed the charged crimes. Hobson testified that he was driving the vehicle, and that it was defendant whom the officers observed attempting to rob the two men and it was defendant who shot Officer Blake. Hanson did not testify.

Defendant first argues on appeal that the trial court erred in admitting defendant's notice of alibi as impeachment evidence because defendant did not pursue an alibi defense at trial. This Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence and will reverse only

where there is a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998).

Before trial, defendant filed a notice of alibi defense pursuant to MCL 768.20, asserting that he was not at the scene of the shooting, but was at another location in Detroit with three named individuals. During trial, defendant testified on his own behalf and acknowledged that he was in the vehicle at the scene of the attempted robbery, but denied any involvement in the attempted robbery or shooting. On cross-examination, the prosecutor sought to impeach defendant's credibility with his notice of alibi, and defendant objected. Relying on *People v Von Everett*, 156 Mich App 615; 402 NW2d 773 (1986), the court allowed the impeachment.

In *Von Everett*, this Court found that the defendant's notice of alibi, which alleged an alibi wholly inconsistent with the alibi to which the defendant testified at trial, was admissible as a party-opponent admission under MRE 801(d)(2)(C) and could be used to impeach the defendant. *Von Everett, supra* at 624. This Court reasoned that admission of the alibi notice for the purpose of impeachment did not infringe the defendant's right to remain silent where the defendant had already testified regarding an inconsistent alibi, and that the impeachment was proper because the inconsistent alibis reflected on the defendant's credibility. *Id.*

In *People v Malone*, 180 Mich App 347, 354; 447 NW2d 157 (1989), this Court relied on *Von Everett* in allowing use of the defendant's notice of alibi defense for the purpose of impeachment, even though the statements made in the notice of alibi were not entirely inconsistent with the defendant's trial testi-

mony. The defendant in that case testified that he was at his sister's house at the time of the offense, which was consistent with his alibi notice, but also testified that he had not seen one of the witnesses listed in his alibi notice on the date of the offense and that he did not know the other one. Again, this Court found the evidence relevant to the defendant's credibility. *Id.*

Defendant attempts to distinguish *Von Everett* on the basis that the defendant in that case presented an alibi defense that was inconsistent with the alibi in his notice of alibi, while defendant in this case did not rely on an alibi defense. Defendant contends that because he did not present an alibi defense at trial, his notice of alibi should be considered analogous to statements made during plea negotiations, which are not admissible under MRE 410, or to statements made by a defendant to an examining psychiatrist, which are not admissible, pursuant to MCL 768.20a(5), if the defendant later chooses not to pursue an insanity defense. We note, however, that in both examples relied on by defendant, there exists a policy-based rule or statute that prohibits admission of the statements in question, including for purposes of impeachment. See, e.g., *People v Toma*, 462 Mich 281, 293; 613 NW2d 694 (2000) (no exception to MCL 768.20a[5] for impeachment exists). Although FR Crim P 12.1(f) prohibits the admission of a statement expressing an intent to rely on an alibi defense if the defense is later withdrawn, there is no such rule in Michigan.

We conclude that the holding of *Von Everett* is not limited to situations where a defendant testifies regarding an inconsistent alibi. Rather, as a party-opponent admission, the notice of alibi may be used to impeach defendant's credibility at trial when his

testimony is inconsistent with the contents of the alibi notice. Here, as in *Von Everett,* defendant's Fifth Amendment right not to testify was not infringed, because the court permitted the impeachment only after defendant testified that he was present at the scene, but did not participate in the attempted robbery or the shooting.[1] Accordingly, we conclude that the trial court did not abuse its discretion in admitting statements made in defendant's notice of alibi defense for the purpose of impeaching defendant.

Defendant next argues that the trial court abused its discretion in denying his motion for a new trial based on the claim that the verdict was against the great weight of the evidence. This Court reviews for an abuse of discretion the trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence. *People v Stiller,* 242 Mich App 38, 49; 617 NW2d 697 (2000). The test is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Gadomski,* 232 Mich App 24, 28; 592 NW2d 75 (1998).

Defendant contends that the verdict was against the great weight of the evidence because witness

---

[1] We thus distinguish this situation from those where a prosecutor attempts to comment on a defendant's failure to put forth an alibi defense after he has filed a notice of alibi defense, or comment on the defendant's failure to produce a witness listed on a notice of alibi, when the defendant has not presented an alibi defense. See, e.g., *People v Holland,* 179 Mich App 184; 445 NW2d 206 (1989); *People v Hunter,* 95 Mich App 734; 291 NW2d 186 (1980); *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979). "Such comment is tantamount to shifting the burden of proof by allowing the jury to make adverse inferences from defendant's or the alibi witness's failure to testify." *Holland, supra* at 190. Where, as here, the alibi notice is used to impeach a defendant's credibility, burden shifting is not implicated.

descriptions of the assailant varied, and none of the descriptions exactly fit defendant. However, "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Although there were discrepancies among witness descriptions of the assailant and defendant's appearance, after review of the entire record we conclude that those discrepancies do not preponderate so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand. *Gadomski, supra.*

Defendant next argues that the court erred in admitting Blake's out-of-court identification of defendant in a photographic lineup after defendant was in custody, and his in-court identification of defendant at trial, because counsel was not present at the photographic lineup, and the in-court identification may have been influenced by the prior photographic identification.[2] Defendant did not object at trial to the admission of the photographic lineup identification or to Blake's in-court identification of defendant. Our review of this unpreserved issue is therefore limited to determining whether defendant has demonstrated a plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant argues in the alternative that his counsel was ineffective for failing to object to the admission of the out-of-court and in-court identifications of defendant by Blake.

---

[2] Defendant does not challenge the propriety of a photographic lineup as opposed to a live lineup.

"In the case of photographic identifications, the right of counsel attaches with custody." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993) (GRIFFIN, J.). Here, it is not possible to determine from the record whether counsel was present at the photographic lineup. At trial, the prosecutor asked Officer Blake if an attorney was present, and he responded that he could not recall. The issue was not further pursued by either party. Also, there is nothing in the record to show that the photographic lineup was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and defendant did not request a *Wade*[3] hearing. *People v Anderson*, 389 Mich 155, 169; 205 NW2d 461 (1973). In any event, even assuming error in the photographic lineup, the record shows that, under the factors listed in *People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977), Officer Blake had a basis for his in-court identification of defendant independent of the photographic lineup.

Blake testified that he viewed his assailant for a few seconds from about ten feet away. There was nothing blocking his view, and although it was nighttime, there was a large yard light illuminating the area where he was shot. Further, as a police officer, Blake is a trained observer and "not likely to have been affected adversely by the stress inherent in the situation." *People v Starks*, 107 Mich App 377, 382; 309 NW2d 556 (1981). See also *People v Davis*, 241 Mich App 697, 704; 617 NW2d 381 (2000). While Blake identified defendant in the photographic lineup only eight

---

[3] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

days after the shooting, defendant relies heavily on a discrepancy between defendant's appearance and the description of the assailant as written by the officer who interviewed Blake in the hospital five days after the shooting. In the written statement, the assailant is described as dark-skinned, while undisputed trial testimony showed that defendant is light-skinned. Blake testified at trial that when he was interviewed in the hospital, he described the driver of the vehicle as dark-skinned and described his assailant as light-skinned. The officer who wrote the statement after interviewing Blake also testified and acknowledged that he incorrectly recorded the descriptions. The court found both officers to be credible and accepted Blake's testimony that he had consistently described his assailant as light-skinned. As finder of fact, the trial court was charged with making credibility determinations, and we find nothing in the record to suggest that the court clearly erred in its findings. *People v Thenghkam*, 240 Mich App 29, 46; 610 NW2d 571 (2000). Blake was thoroughly cross-examined with regard to the conditions and circumstances under which he viewed his assailant and thus any reason to question the accuracy of his identification was before the court. Therefore, defendant's substantial rights could not have been materially affected by the photographic identification procedure.

Further, the court specifically stated that it did not rely solely on Blake's identification of defendant in finding defendant guilty. The court also relied on the descriptions of the assailant given by the two men who were the victims of the attempted robbery, testimony by Hobson's girlfriend, testimony by Officer Alfred Thomas concerning the description of the

assailant that he entered in the preliminary complaint record he filed the night of the shooting, the fact that it was Hobson's girlfriend's vehicle that was involved and thus more likely that Hobson would be the driver, the fact that defendant's coat was found at the scene, and defendant's lack of credibility.

Because defendant has failed to show that any error in admitting the photographic identification and in-court identification by Blake affected the outcome of the trial, we find that defendant forfeited his claim of error in this regard by not timely objecting to admission of the evidence. *Carines, supra* at 772. Likewise, because defendant has not established that there is a reasonable probability that, but for any alleged error in defense counsel's failure to object to the admission of the photographic identification and Blake's in-court identification of defendant, the result of the proceedings would have been different, his claim of ineffective assistance of counsel also fails. *Toma, supra* at 302-303.

Defendant next argues that the trial court erred in admitting Hobson's prior consistent statement under MRE 801(d)(1)(B), because Hobson made the prior consistent statement at a time when he had a strong motivation to lie and defense counsel had not alleged a recent fabrication. Again, this Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence and will reverse only where there is a clear abuse of discretion. *Starr, supra* at 494.

MRE 801(d)(1)(B) provides that a statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the

statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

"[A] consistent statement made after the motive to fabricate arose does not fall within the parameters of the hearsay exclusion for prior consistent statements." *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

Hobson testified that he told Kevin Ingram about the shooting the day after it happened. Hobson also testified that, about an hour after the shooting occurred, he received a telephone call from his stepmother informing him that his brother had been arrested because the license plate on his girlfriend's vehicle had been traced to his stepmother's house. Over defendant's hearsay objection, Ingram testified that Hobson told him the day after the shooting that a "tall, bald guy" he was with "messed up and shot a police," but did not identify the assailant by name. The court ruled that the statement was not hearsay under MRE 801(d)(1)(B). However, given the telephone call he received from his stepmother, Hobson had a motive to lie when he spoke to Ingram, because he knew that the vehicle had been traced to his family and his involvement would likely be discovered. Because consistent statements made after the motive to fabricate arose are nonadmissible hearsay, the trial court abused its discretion in admitting the evidence. *Rodriquez, supra.*

Although the court made reference to Ingram's testimony as being corroborative of Officer Blake's testimony regarding his description of the assailant, in light of the strength and weight of the untainted evi-

dence cited by the trial court, we conclude that the error in admitting Ingram's testimony regarding the prior consistent statement was harmless. *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). Because defendant has not established it is more probable than not that the error in question " 'undermine[d] the reliability of the verdict,' thereby making the error 'outcome determinative,' " reversal is not warranted. *People v Snyder*, 462 Mich 38, 45; 609 NW2d 831 (2000), quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Finally, we find no merit in defendant's argument that he was denied his right to a fair trial because the prosecution failed to reveal that it had offered Hobson leniency in exchange for his testimony. First, because defendant made no inquiry at trial with regard to any agreement for Hobson's testimony, this issue is unpreserved. Further, defendant points to no record facts indicating that there was an agreement for Hobson's testimony; rather, defendant simply asserts that given Hobson's self-incriminating testimony, the prosecution must have withheld evidence of the existence of such an agreement. See *People v Atkins*, 397 Mich 163, 172-174; 243 NW2d 292 (1976). Finally, the record shows that the court was fully apprised of Hobson's presence at the scene and his possible motivation for testifying through cross-examination by defense counsel, and that the court considered Hobson's participation in the events leading to the shooting in assessing his credibility. *Id.* at 171-172. Because defendant has not demonstrated that he suffered any prejudice, this unpreserved issue is forfeited. *Carines, supra.*

We note that the amended judgment of sentence incorrectly states that defendant was convicted of three counts of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The record reflects that defendant was convicted of, and sentenced for, one count of assault with intent to commit murder, two counts of assault with intent to commit armed robbery, MCL 750.89, and possession of a firearm during the commission of a felony. Therefore, we remand for correction of the amended judgment of sentence consistent with the record.

Affirmed and remanded for correction of the amended judgment of sentence. We do not retain jurisdiction.