*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS RONNELL CROFF,

Defendant-Appellant.

UNPUBLISHED
January 30, 2020

No. 344197
Wayne Circuit Court
LC No. 17-009474-01-FC

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his convictions following a bench trial of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to consecutive prison terms of 17 to 30 years for the second-degree murder conviction and two years for the felony-firearm conviction. We affirm.

## I. FACTS

Defendant attended a birthday party for his cousin at a bar. When defendant went outside, he and Antonio Hamilton had a verbal altercation that escalated into a fight that bystanders eventually broke up. Defendant then retrieved his gun from a vehicle. Witnesses testified at trial that defendant approached Hamilton with the gun, at which point defendant and Hamilton struggled for the gun. Defendant shot the gun a few times during the struggle striking Hamilton in the face, chest, and abdomen. Defendant fled. Police and emergency medical personnel arrived at the scene and rendered first aid, but Hamilton later died en route to a hospital. The following day, defendant's attorney contacted the police and defendant agreed to be interviewed by the police during which he surrendered his gun. Defendant claimed that he acted in self-defense. At trial, defendant testified that Hamilton followed him after their fight; and that after he retrieved his gun from a car, he fired warning shots in the air. Hamilton attempted to take the gun from defendant, and during the struggle the gun discharged accidentally. Defendant then intentionally shot Hamilton fearing that he would take the gun and shoot defendant. The gun went off a third time accidentally.

-1-

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that the trial court's verdict was against the great weight of the evidence because he acted in self-defense, the prosecution's witnesses lacked credibility, and if the evidence established that defendant did not act in lawful self-defense, the evidence supported a voluntary manslaughter conviction, not a second-degree murder conviction. We disagree.

A verdict is against the great weight of evidence when the "evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001); quoting *People v Gadomski*, 232 Mich App 24, 27-28; 592 NW2d 75 (1998). We review for clear error a trial judge's findings of fact in a bench trial and review de novo its conclusions of law. *People v Pennington*, 323 Mich App 452, 464 n 7; 917 NW2d 720 (2018). A factual finding is clearly erroneous if, after review of the entire record, an appellate court is left with a definite and firm conviction that an error occurred. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).

To establish that a defendant committed second-degree murder, the prosecution must prove beyond a reasonable doubt: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). A defendant acts with malice where he acts with "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Henderson*, 306 Mich App 1, 9-10; 854 NW2d 234 (2014) (quotation marks and citation omitted). However, "the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502-503; 456 NW2d 10 (1990) (citations omitted). "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Id*. at 503.

To prove self-defense, the evidence must demonstrate that the defendant "reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). Generally, an individual who is "not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary," but only if the individual believes that he is in immediate danger of bodily harm and that the use of force is necessary to avoid said danger. *Id*. Defendant has the initial burden of production of "some evidence from which a [fact-finder] could conclude that the elements necessary to establish a prima facie defense of self-defense exist." *People v Reese*, 491 Mich 127, 155-156; 815 NW2d 85 (2012). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).

Evidence of flight is admissible to support an inference of a consciousness of guilt. *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003).

Because deadly force self-defense is justified only where it is *necessary* to avoid immediate danger, it is required that "the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). However, "a person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*. In the Self-Defense Act (SDA), MCL 780.971 *et seq*. the Legislature "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. The SDA modified the common law duty to retreat, but the SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault to justify the use of deadly force. MCL 780.972(1). The statute provides, in relevant part, as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. [MCL 780.972(1).]

Generally, questions of witness credibility are for the fact-finder. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Witness credibility is determined by not only their words, but also features such as tonal quality, volume, speech patterns, and the witness's demeanor. *People v Lemmon*, 456 Mich 625, 646; 576 NW2d 129 (1998). Conflicts in witness testimony and questions regarding witness credibility are generally insufficient grounds for a new trial. *Id*. at 647. We "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012), quoting *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). We give deference to the trier of fact's determination of credibility unless material testimony contradicted indisputable physical facts or laws, defied physical realities, was patently incredible, was so inherently implausible that it could not be believed by a reasonable fact-finder, or was seriously impeached in a case marked by uncertainties and discrepancies. *Lemmon*, 456 Mich at 642-644. That was not the case here. The record indicates that the trial court reasonably based its decision on the testimony and evidence at trial which did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

The record reflects that, following the parties' submissions of all the evidence, the trial court made findings of fact and conclusions of law. The trial court recounted witnesses'

testimonies that established that defendant and Hamilton engaged in an altercation that escalated into a fistfight, Hamilton throwing the first punch after defendant flicked his hat. Bystanders broke up that fight, but afterward defendant retrieved his phone and his gun from a vehicle and initiated a further altercation between defendant and Hamilton.

The trial court noted that one witness testified that he and Hamilton were about 12 feet away from their vehicle on the street when he suddenly saw defendant approach with a gun, heard gunshots, and saw defendant and Hamilton struggling for a gun. Another witness told the police that he saw one of the two people who fought outside the bar move toward the other fighter with a gun before he heard gunshots. Witnesses testified that, as defendant and Hamilton struggled, defendant held the gun in one hand and struck Hamilton with his other hand. Shots were then fired and Hamilton fell down in the street. The record indicates that some inconsistencies in witnesses' testimonies existed but most of their testimonies of the events were consistent with other evidence presented regarding the events that occurred on the night of the incident. The trial court acknowledged the variation in testimonies but appropriately determined that the material facts were not disputed.

The record reflects that the trial court viewed the video evidence of the incident that depicted the argument and first fight between defendant and Hamilton and indicated that, at its conclusion, defendant had the advantage and a position on top of Hamilton inflicting blows and had to be restrained and removed off of him. Such video footage provided evidence that did not establish a basis for defendant to reasonably fear for his safety.

The trial court correctly found based upon the evidence that when defendant retrieved his gun the safety was off and a round was loaded in the chamber. Defendant testified that he fired one or more warning shots. Defendant admitted that Hamilton was unarmed and that he could have walked away after the first fight and even again when he noticed Hamilton coming toward him. Defendant testified that he and Hamilton fought for the gun. Although defendant's testimony established that he shot one shot accidentally, he admitted that he intentionally fired a second shot that struck Hamilton. He also admitted that he fired a third shot but asserted the gun fired accidentally. The record indicates that the trial court considered defendant's explanation but found defendant's testimony regarding the involuntariness of the last shot lacking in credibility because evidence established that Hamilton was not touching defendant at the time. Further, defendant admitted that he could have rendered aid to Hamilton but instead fled the scene.

The trial court found that testimony established that Hamilton never possessed a gun and that only defendant had a gun. Hamilton was highly intoxicated but defendant was not. The record reflects that the trial court considered the forensic evidence and testimony presented by investigators that established that the handle of defendant's gun featured only defendant's DNA. The trial court found that such evidence indicated that defendant had control over the gun at all times. The trial court also found, based on witnesses' testimonies that defendant acted as the aggressor during the second fight and a struggle ensued over the gun which defendant brandished. The trial court found that defendant failed to act reasonably under the circumstances by escalating the situation by bringing his gun into the situation; and regardless whether defendant fired his gun into the air initially as he claimed or pointed it at another witness,

defendant acted unreasonably by firing his gun and using deadly force when the circumstances did not require such conduct.

The trial court's factual findings were well supported by the evidence presented at the bench trial. The trial court sat in the best position to consider the witnesses' credibility by observing and hearing them testify. *Lemmon*, 456 Mich at 646. The great weight of the evidence supported the trial court's finding that defendant escalated the situation by retrieving his gun and acting as the aggressor. Although defendant testified in support of his self-defense theory, the record evidence does not support his contention that the circumstances justified his conduct. The prosecution presented evidence that excluded defendant's self-defense claim beyond a reasonable doubt. The trial court's findings were not clearly erroneous. The great weight of the evidence established all of the elements of second-degree murder and defendant's guilt beyond a reasonable doubt.

Defendant argues that, even if he was not justified in using deadly force he was justified in using deadly force to protect himself once Hamilton attempted to disarm him. The evidence, however, established that Hamilton neither had a weapon nor charged at defendant nor attacked him. Although Hamilton grappled with defendant over the gun, defendant maintained his possession and control of it and intentionally fired and struck Hamilton. Because the trial court did not clearly err by finding that the evidence did not support defendant's claim of self-defense, the evidence did not preponderate so heavily against the verdict that it would be a serious miscarriage of justice to allow the verdict to stand. See *Gadomski*, 232 Mich App at 27-28.

Defendant argues in the alternative that the great weight of the evidence demonstrated that he committed voluntary manslaughter rather than second-degree murder. A voluntary manslaughter conviction requires the same proofs as a second-degree murder conviction, but it also requires "evidence of provocation as *a mitigating factor*." *People v Darden*, 230 Mich App 597, 602-603, 585 NW2d 27 (1998). "[T]he element distinguishing murder from manslaughter—malice—is negated by the presence of provocation and heat of passion." *Reese*, 491 Mich at 152, quoting *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003) (quotation marks omitted). Voluntary manslaughter occurs when "the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*. at 535-536. Rather than being an element of voluntary manslaughter, "provocation is the circumstance that negates the presence of malice." *Id*. at 536. A person acts in the heat of passion when a reasonable person in the defendant's situation would lose control and act out of passion rather than reason. *People v Roper*, 286 Mich App 77, 86-87; 777 NW2d 483 (2009).

Defendant argues that Hamilton provoked him into the heat of passion by using upsetting words about defendant's cousins, by fighting defendant and using threatening language, and only a few minutes elapsed between the first fight and Hamilton's attempt to disarm defendant. The record, however, indicates that defendant admitted that, following Hamilton's disparaging remarks and the first fight, the two separated, defendant thought that the fight had ended, and he prepared to leave. The evidence does not support his contention that he was compelled by the heat of passion to act. The evidence establishes that he rationally planned to leave the location and time elapsed before Hamilton approached him. Additional evidence established that when defendant encountered Hamilton again at his cousin's vehicle, he did not act in the heat of

passion. Defendant took time to retrieve his phone and his gun from the vehicle without haste. Evidence indicates that Hamilton stood in the street. Defendant testified that he shot his gun in the air to warn Hamilton who then grappled with defendant who then intentionally shot Hamilton because Hamilton attempted to dispossess him of his gun. Defendant's testimony, however, did not reveal that he lacked the rational capacity to consider his action before and during the second altercation with Hamilton. Therefore, the trial court did not clearly err by finding that defendant did not act out of passion.

Defendant also argues that his "imperfect self-defense" mitigated second-degree murder to manslaughter. However, "the doctrine of imperfect self-defense does not exist as a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." *Reese*, 491 Mich at 150. "[T]he operative analysis for the fact-finder is not whether the circumstances involving 'imperfect self-defense' exist," but whether "the prosecution has proved the element of malice beyond a reasonable doubt." *Id*. at 151.

In this case, the evidence established that defendant acted in wanton and wilful disregard of the likelihood that the natural tendency of his behavior would cause death or great bodily harm to Hamilton. See *Henderson*, 306 Mich App at 9-10. Additionally, because the intent to kill may be inferred from the use of a deadly weapon, a defendant's use of a gun is evidence of malice. *Henderson*, 306 Mich App at 11. The fact-finder may infer malice from evidence "that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Stiller*, 242 Mich App 38, 43; 617 NW2d 697 (2000) (quotation marks and citation omitted). Defendant admitted at trial that he intentionally shot Hamilton once. The record indicates that the prosecution proved the malice element of the charged offense beyond a reasonable doubt. Accordingly, the trial court appropriately found defendant guilty of second-degree murder, rather than voluntary manslaughter.

## III. SENTENCING

Defendant argues that the trial court imposed a sentence disproportionate to his crime. We disagree because the trial court sentenced defendant within the minimum sentencing guidelines range.

This Court reviews for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A sentence that fulfills the principle of proportionality under *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), is reasonable under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). In *Babcock*, 469 Mich at 263, our Supreme Court held that the Legislature had incorporated the principle of proportionality into the sentencing guidelines. Thus, a "sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate." *Armisted*, 295 Mich App at 51, citing *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

Under MCL 769.34(10),

If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

In *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), this Court explained that *Lockridge* did not alter or diminish MCL 769.34(10). Therefore, we must affirm defendant's sentence, unless the trial court erred in scoring under the guidelines, or relied on inaccurate information when determining defendant's sentence. *Armisted*, 295 Mich App at 52, citing MCL 769.34(10), and *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). Defendant's argument that MCL 769.34(10) is invalid following *Lockridge* is unavailing. Further, defendant has failed to prove that the trial court erred in scoring under the guidelines or that it relied on inaccurate information when determining his sentence. Accordingly, the trial court did not abuse its discretion when it sentenced defendant within the sentencing guidelines range.

Affirmed.

/s/ Karen M. Fort Hood
/s/ James Robert Redford