*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 359679
Ingham Circuit Court
LC No. 20-000103-FC

VICTOR RUMALDO RUIZ,

Defendant-Appellant.

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim less than 13 years of age by a defendant 17 years of age or older) and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with victim less than 13 years of age by a defendant 17 years of age or older). The trial court sentenced defendant to concurrent prison terms of 300 to 600 months for the CSC-I conviction and 38 to 180 months for the CSC-II conviction, with credit for 34 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The complainant in this case, AN, is defendant's goddaughter; defendant was a friend of the family and was considered a family member by AN and her older brother. AN and her brother regularly spent the night at defendant's house, and had done so since their early childhood. Defendant typically required the children to shower upon their arrival, allegedly out of concern for his daughter's health. Starting when she was seven years old, according to AN, defendant would lead her into the bathroom and wash her every time she was at defendant's home. He would rub the outside of her vagina or place his fingers inside her vagina, and he would often use a detachable showerhead on her genital area. AN did not initially regard this as abnormal, but she eventually realized it was abusive. AN began making excuses not to go to defendant's house and eventually stopped going when she was approximately 12 years old. AN became depressed and reclusive, and eventually disclosed the abuse, first to another minor friend when she was 13, and then to KR, an adult family friend, when she was 14 years old.

-1-

At trial, AN testified regarding defendant's sexual abuse. Additionally, the prosecution presented Thomas Cottrell as an expert witness. Cottrell testified generally regarding various misconceptions about child victims of sexual abuse, including why and how often they might delay disclosing the abuse and that traumatic memories tended to be disjointed and difficult to remember precisely.

Defendant's theory of the case at trial was that AN's allegations were impossible. AN's brother had testified that there was a curtain preventing him from seeing anyone going into the bathroom, but defendant testified that the only curtain covered the door to a closet. Defendant and his girlfriend both testified that the showerhead at his house—until he moved to a new house—did not have any attachments. Defense counsel also argued that the house was small and that it was improbable that defendant could have repeatedly entered the bathroom while AN was using it without being seen by other people in the house. Defense counsel dismissed Cottrell's testimony as providing nothing of value, arguing that Cottrell did not have any research behind his opinions, knew nothing about the facts of the case, and had testified more than 300 times for the prosecution and never once for a defendant.

Defendant was convicted as described. After trial, defendant moved for a new trial or a *Ginther*[1] hearing in the trial court on the basis of ineffective assistance of counsel. The trial court granted defendant's request for a *Ginther* hearing. At the *Ginther* hearing, defense counsel testified that he was aware of Cottrell's probable testimony, and that in counsel's experience, juries tended to disregard experts. Furthermore, defense counsel opined that presenting an expert to rebut Cottrell's testimony would have been of little value, because any expert he presented would have been subject to most of the same limitations as Cottrell and that expert's testimony would have been dismissible in much the same way. The trial court denied defendant's motion for a new trial. This appeal followed. After filing his brief on appeal, defendant moved this Court to file a supplemental brief containing additional arguments regarding his trial counsel's effectiveness, which this Court granted.[2] Defendant also moved this Court to remand for a second *Ginther* hearing on the issue of his trial counsel's alleged ineffectiveness, and to allow additional supplemental briefing after remand, which this Court also granted.[3] At the second *Ginther* hearing, defendant presented an expert, Dr. Steven Miller, who mostly agreed with Cottrell's testimony, but who disagreed with two specific points as contrary to scientific research. Miller opined that delayed disclosures were not "very common" but instead occurred roughly 50 percent of the time; further, Miller disagreed with Cottrell's statement that traumatic memories were recalled differently from ordinary memories. The trial court found that defendant's counsel had engaged in a sound trial strategy and that Dr. Miller's testimony would not have helped the defense, and accordingly, defendant's counsel was not ineffective.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Ruiz*, unpublished order of the Court of Appeals, entered June April 24, 2023 (Docket No. 359679).

[3] *People v Ruiz*, unpublished order of the Court of Appeals, entered June 13, 2023 (Docket No. 359679).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his main brief on appeal and two supplemental briefs, defendant argues that he received ineffective assistance of counsel at trial for various reasons, mostly related to his counsel's response—or lack thereof—to Cottrell. We disagree. "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review for clear error a trial court's findings of fact, and we review de novo questions of law. *Id*.

"In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *Id*. at 488 (quotation marks and citation omitted).

Counsel is presumed to have made strategic decisions, which this Court will not second-guess or review with the benefit of hindsight. *People v Urbanski*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359011); slip op at 3. A trial strategy is not ineffective merely because it was unsuccessful or entailed taking calculated risks. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). But "counsel's strategic decisions must be objectively reasonable." *Yeager*, 511 Mich at 488. "Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 12.

A defendant must also show a reasonable probability that counsel's errors affected the outcome of the proceeding. *Yeager*, 511 Mich at 488. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Urbanski*, ___ Mich App at ___; slip op at 6 (quotation marks, brackets, and citation omitted). The probability need not rise to the level of a preponderance of the evidence, *id*., ___ Mich App at ___; slip op at 6; and the fact that there was sufficient other evidence introduced to support a defendant's conviction "does not obviate the need to make a prejudice determination" because "a prejudice analysis requires determining how the error affected other evidence properly presented." *People v Dufek*, 510 Mich 957, 957-958 (2022). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 14.

### A. COTTRELL'S QUALIFICATIONS

Defendant argues that defense counsel was ineffective for failing to make additional efforts to disqualify Cottrell under MRE 702. We disagree; any efforts by counsel to do so would have been futile, so counsel was not ineffective on this basis.

Under MRE 702, a trial court must act "as a gatekeeper for expert testimony" and exclude any such testimony that, following a "searching inquiry," does not meet minimum standards for reliability and relevance. *People v Muniz*, 343 Mich App 437, 443; 997 NW2d 325 (2022) (quotation marks and citations omitted). That inquiry is merely a threshold determination that the expert's opinion is not "only masquerading as science," not an inquiry into "whether the proposed expert's evidence is true or universally accepted." *People v Spaulding*, 332 Mich App 638, 658; 957 NW2d 843 (2020) (quotation marks and citations omitted).

This Court has held that Cottrell's testimony regarding typical symptoms of child victims of sexual abuse is reliable and admissible under MRE 702, even if Cottrell only expressly cites his own training and experience in support of his testimony instead of citing academic research. *Muniz*, 343 Mich App at 443-444. Although "it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible," nevertheless "[a] witness may be qualified as an expert by knowledge, skill, experience, training, or education." *Id*. (quotation marks and citation omitted). In *Muniz*, Cottrell "testified regarding his training, continuing education through conferences and training sessions, and research" as "sources of his knowledge." *Id*. In this case, Cottrell likewise testified about his training, continuing education, participation in seminars, and reliance on a treatise as sources of his knowledge.

This Court in *Muniz* also observed that, even in the absence of specific citations to academic journals, "there has developed a body of knowledge and experience about the symptomatology of child abuse victimization that serves only to define the broad range of *possible* physical, psychological, and emotional reactions that a child victim could potentially experience," and expert testimony can "give the jury a framework of possible alternatives for the behaviors" and give the jury background information to help "dispel any popular misconception commonly associated with" an individual's demonstrated behavior. *Id*. at 443-444 (quotation marks, brackets, and citations omitted). This Court concluded that Cottrell's testimony was helpful to dispel common misapprehensions about how such victims might behave. *Id*. at 445-446. Such testimony does not constitute improper vouching for a victim's credibility merely because "the general information about abuse victims' conduct about which Cottrell testified happened to be consistent with the complainant's postincident behavior." *Id*. at 446-447.

Defendant argues that *Muniz* is distinguishable because the defendant in that case "did not interrogate Cottrell about research or studies that either supported or contradicted his opinions" and "failed to establish any ground for doubting Cottrell's reliability." *Muniz*, 343 Mich App at 445. We disagree. In *Muniz*, the defendant sought a new trial and provided an affidavit from a psychologist stating that many of Cottrell's statements lacked scientific consensus or scientific support. *Id*. In other words, the defendant in *Muniz* provided a scientific criticism of Cottrell similar to defendant's scientific criticism of Cottrell in this case. This Court recognized the scientific criticisms lodged against Cottrell and held that, notwithstanding the affiant's disagreements with Cottrell, "Cottrell defined the parameters of his knowledge base, which were adequate to qualify him." *Id*.

This Court has determined that, notwithstanding possible criticism, Cottrell's opinions are sufficiently reliable and helpful to be admissible under MRE 702. In short, this Court has rejected arguments essentially identical to those defendant makes now; we reject those arguments for the

same reasons. *Id.* at 443-447; see also MCR 7.215(J)(1). Because this Court has determined that Cottrell's testimony, at least under circumstances like those in this case, does not constitute improper vouching and is admissible under MRE 702, it would have been futile for defense counsel to make further efforts to disqualify Cottrell as an expert or exclude his testimony. *Serges*, ___ Mich App at ___; slip op at 14; see also *Urbanski*, ___ Mich App at ___; slip op at 5.

## B. LACK OF OPPOSING EXPERT WITNESS

Defendant argues that his counsel was ineffective for failing to investigate the possibility of consulting or presenting an expert to rebut Cottrell's testimony. We disagree. Counsel had sound strategic reasons for pursuing a strategy of discrediting the victim instead of engaging in a battle of the experts, and defendant has not established a reasonable probability that this strategy affected the results of the proceedings against him.

Defendant essentially argues that it is per se deficient performance for defense counsel not to consult an expert any time the prosecution presents an expert. This argument is not supported by the law. Although defense counsel's decision whether to call an expert is generally considered trial strategy, that decision must be made after an adequate investigation, and counsel may be ineffective for failing to consult an expert if the attorney lacked the experience or education to make a reasonable and informed decision whether to call the expert. *In re Casto*, 344 Mich App 590, 612-613; 2 NW3d 102 (2022). However, "the inquiry is not whether a defendant's case might conceivably have been advanced by alternate means," and counsel is not ineffective merely because "[o]ne can posit theories under which the defense might have been advanced by using" an expert's testimony. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). "In many instances cross-examination will be sufficient to expose defects in an expert's presentation," and the standard for effective assistance of counsel "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 US at 111.

In this case, Cottrell's testimony was generic; nothing about it was specifically targeted toward defendant or AN. Cottrell testified that he has testified in many cases, and he has been the subject of multiple appellate opinions that described how he testified as an expert regarding the dynamics of child sexual abuse. See *People v Thorpe*, 504 Mich 230, 239-241, 253-254; 934 NW2d 693 (2019); *Muniz*, 343 Mich App at 441-449; *People v Warner*, 339 Mich App 125, 132, 152-153; 981 NW2d 733 (2021); *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). Defense counsel therefore would have been able to anticipate Cottrell's probable testimony, including its weaknesses and limitations, without needing an expert of his own. Further, defense counsel successfully elicited testimony from Cottrell that Cottrell had performed no formal research of his own and was unable to immediately cite any research other than a treatise. Although Cottrell would not have been permitted to talk about the specifics of the case in any event, see *Muniz*, 343 Mich App at 446-447, defense counsel nevertheless expressly established that Cottrell knew nothing about the case, a point on which counsel relied during closing argument.

Furthermore, defense counsel testified at the *Ginther* hearing that he believed from extensive experience that juries tended to disregard experts, and that experts usually told him they could not be of value to the defense in cases like this. Counsel's decision not to pursue further

investigation was reasonable and informed by his extensive experience. *People v Trakhtenberg*, 493 Mich 38, 52-54, 54 n 9; 826 NW2d 136 (2012); see also *Harrington*, 562 US at 112.

Furthermore, Dr. Miller essentially agreed with most of Cottrell's testimony, disagreeing only as to two details. We do not find that disagreement significant. Even presuming there is a meaningful distinction between delayed disclosures being "very common" rather than occurring roughly half the time, neither Cottrell nor the prosecution suggested that AN should be believed *because* she delayed disclosing the abuse. Dr. Miller agreed with Cottrell's explanations about why child victims might delay disclosure, and AN's explanations for why she delayed disclosure would have been supported by either expert's testimony. Dr. Miller opined that the jury should have been offered an "alternative explanation" that AN was not traumatized by defendant's conduct at the time it happened and was only traumatized later when she realized it was wrong, but that is exactly what AN herself testified happened. Dr. Miller also opined that Cottrell incorrectly described traumatic memories as fragmented, and noted that AN's memories appeared from her testimony to be precise and consistent. But Cottrell never offered the opinion that AN was traumatized, and he admitted that he was unfamiliar with the specific case being tried; additionally, the jury could judge for itself whether AN's testimony was credible, and trauma to the victim is not a required element of either CSC-I or CSC-II.

We also note that our Supreme Court has imposed limitations on Cottrell's testimony that would have applied equally to Dr. Miller's testimony. Our Supreme Court has held that an expert may not indirectly vouch for a victim's credibility by offering statistics that children rarely lie about sexual abuse. *Thorpe*, 504 Mich at 259-260. And no expert may render an opinion whether a sexual-assault victim's allegations are true. *Muniz*, 343 Mich App at 446. Therefore, Dr. Miller would not have been permitted to suggest that AN's allegations were *not* true anymore than Cottrell would have been permitted to suggest that her allegations *were* true. If Dr. Miller had testified at trial, he would have lacked foreknowledge of AN's testimony and, as the trial court found, he could have provided no more "testimony as to the validity of the victim's statements," *Muniz*, 343 Mich App at 447, than Cottrell could have provided.

In other words, if Dr. Miller had testified, defendant would have risked presenting the jury with another expert who would have offered almost nothing new, would have agreed in a large part with the prosecution's expert, and would have deprived defendant of a significant part of counsel's trial strategy. In fact, Dr. Miller's opinion that traumatic memories were recalled as well as, if not better than, any other important memory could have supported AN's testimony, because her memories were clear and consistent. And the difference between Dr. Miller's and Cottrell's opinions regarding the overall frequency of delayed disclosure is unlikely to have made a difference in this specific case. Furthermore, if Dr. Miller had testified at trial, he would have been subject to the same limitations as Cottrell, would have received no information about the case, and would have been subject to the same prohibition against opining about AN's credibility. Under these circumstances, defense counsel was not ineffective for failing to present an opposing expert witness. *Yeager*, 511 Mich at 488.

## C. LACK OF INVESTIGATION/FAILURE TO CALL WITNESSES OR OFFER EVIDENCE

Defendant also argues that defense counsel was ineffective for failing to interview and call certain additional witnesses and for failing to offer into evidence a photograph of the showerhead. We disagree; the value of this proposed testimony and evidence would have been minimal at best, and potentially harmful, and counsel was not ineffective for not presenting it.[4]

Most of the proposed witnesses' testimony that defendant argues should have been presented would not only have been redundant, but concerned facts that were not even disputed. Everyone agreed that defendant's former home was very small, that children were generally required to shower when they came over to defendant's house, and that the children did not seem apprehensive about going to defendant's house (at least before AN was 11 years old). If the jury did not already accept those facts, to which prosecution and defense witnesses alike agreed, it is difficult to imagine why the jury would have been impressed by additional witnesses repeating those facts again.

Defendant also argues that a photograph of defendant's showerhead should have been introduced into evidence; but the photograph provided to defense counsel, taken by defendant's girlfriend, was a low-quality, close-up of a showerhead with no identifying features to show that it had come from defendant's bathroom. Defendant's girlfriend testified at trial and described the showerhead, permitting defense counsel to argue that AN had inaccurately described the showerhead and that it was not, in fact, detachable. If the jury did not believe defendant's girlfriend's testimony, it is unlikely the jury would have been swayed by the anonymous photograph she provided. Finally, the evidence established that defendant had moved during the course of AN's childhood, that defendant's new house *did* have a detachable showerhead, and that AN was made to take at least a few showers there. This testimony and evidence would not have affected the verdict.

Defendant also argues that his defense counsel should have offered testimony from one of his minor nieces, MB, who would testify that she had taken showers at defendant's house and had not been sexually abused. The trial court appropriately described such a strategy as "fraught with peril." Defendant had previously sexually assaulted another niece in 1998. Although there was no specific evidence that defendant abused MB, it is conceivable that she could have revealed testimony unfavorable to defendant on cross-examination, or that such testimony could have resulted in the introduction of evidence of defendant's sexual assault of another minor girl. In any event, MB's testimony would not obviously have advanced the defense theory of the case, which was that the alleged sexual assaults were impossible rather than out of character. We conclude that defense counsel was not ineffective for deciding not to present a witness whose testimony

---

[4] Contrary to the prosecution's assertion, our Supreme Court has rejected the proposition that failure to call a witness constitutes ineffective assistance of counsel only if it deprives a defendant of a substantial defense, holding that counsel's failure to call a particular witness "is analyzed under the same standard as all other claims of ineffective assistance of counsel." *People v Jurewicz*, 506 Mich 914, 914 (2020).

could ultimately backfire and whose testimony would not have advanced his theory of the case. *Yeager*, 511 Mich at 488.

Defendant also argues that witnesses could have testified to refute AN's brother's testimony that the view of the bathroom was blocked by a curtain, and who would testify that it was impossible to enter the bathroom without someone noticing. This proposed evidence would ultimately be relevant only to whether someone in the living room could see someone entering the bathroom. The evidence presented shows that AN's brother was generally in the living room while AN was showering, but that he was not paying attention to the bathroom and knew of no reason why he would do so. Defendant's girlfriend testified that she was frequently in a bedroom next to the bathroom, and from there she could see anyone entering the bathroom. The presence or absence of a curtain would therefore not affect whether the girlfriend could or would have seen defendant entering the bathroom, and the jury necessarily found that defendant entered the bathroom, notwithstanding the girlfriend's testimony. On the record as a whole, even presuming defense counsel should have investigated these witnesses further, defendant has not demonstrated prejudice. *Harrington*, 562 US at 112.

## D. HEARSAY

Defendant also argues that defense counsel should have challenged KR's testimony concerning two statements by AN that he contends were inadmissible and prejudicial hearsay. Both are statements AN allegedly made to KR, the adult to whom she first disclosed the abuse. We conclude that reversal is not required; one statement was technically inadmissible hearsay, but any objection would have likely hurt defendant more than helped, and the other was clearly admissible under an exception to the prohibition against hearsay evidence.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence" pursuant to MRE 801 and MRE 802. *People v Propp (On Remand)*, 340 Mich App 652, 662; 987 NW2d 888 (2022), app for lv held in abeyance 990 NW2d 336 (2023) (quotation marks and citation omitted). An out-of-court statement previously made by a witness who testifies at trial is not hearsay under MRE 801(d)(1)(B) if it is introduced to rebut a charge of recent fabrication and the statement was made before the alleged motive to fabricate arose. *People v McCray*, 245 Mich App 631, 642; 630 NW2d 633 (2001). A hearsay statement may be admitted if it directly describes a declarant's present mental, emotional, or physical condition. *People v Moorer*, 262 Mich App 64, 68-69; 683 NW2d 736 (2004). This exception does not include "statements of mind that are based on past events." *Moorer*, 262 Mich App at 73. "[A] statement explaining a past sequence of events, from the standpoint of the declarant at the time of the statement, is a 'statement of memory or belief' that is explicitly excluded from the exception." *Id*.

KR testified that, during a conversation about a celebrity discussing sexual abuse, she made a comment about being glad AN "made it," meaning that AN had never been sexually touched by an older man when she was younger. In response, AN broke down crying and said that she "didn't make it." Although the prosecution argues that the statement was excluded from the hearsay rule as a prior consistent statement offered to rebut a charge of recent fabrication, the record shows that this statement was made during AN's initial disclosure to KR—in other words, it was part of the

same conversation in which AN made what defense counsel argued were false allegations. It is therefore doubtful that the statement was made before the alleged motive to fabricate arose. See *McCray*, 245 Mich App at 642; MRE 801(d)(1)(B). It is also doubtful that the statement was introduced to show the effect it had on KR, rather than for the truth of the matter asserted. Nevertheless, "there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). By the time KR testified, the jury already knew that AN had disclosed her abuse to KR at age 14, and the specific words "I didn't make it" were just details, not new knowledge. Defense counsel could have reasonably believed that drawing attention to that portion of the testimony by objecting might have had an emotional or otherwise unfavorable impact on the jury. In any event, defendant has not demonstrated that the failure to object to KR's testimony regarding AN's specific words was outcome-determinative. *Yeager*, 511 Mich at 488.

KR also testified that when AN was 11 or 12, she told KR that she did not like to be around "guys" (i.e., males in general) because they "just make me uncomfortable." This statement appears to be a statement describing AN's then-present emotional state, and it therefore was admissible under MRE 803(3). See *Moorer*, 262 Mich App at 68. Counsel is not ineffective for failing to make a futile objection. *Serges*, ___ Mich App at ___; slip op at 14. Further, even if the statement did not fall under a hearsay exception, it is doubtful that a single comment made by an 11- or 12-year-old girl about being uncomfortable around "guys" had an impact on the outcome of the proceedings against defendant. Under these circumstances, defense counsel was not ineffective for failing to object to this statement. *Yeager*, 511 Mich at 488.

### III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdict was against the great weight of the evidence. We disagree. Although defendant did request a new trial, he "failed to request a new trial based on the great weight of the evidence and, therefore, this challenge is not preserved for appellate review." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). "An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand," but "when a party fails to preserve a great-weight issue for appeal, an appellate court will look for plain error affecting the defendant's substantial rights." *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011) (quotation marks and citations omitted).

"Generally, a verdict is against the great weight of the evidence only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Anderson*, 341 Mich App 272, 277; 989 NW2d 832 (2022). "Questions regarding [witness] credibility are not sufficient grounds for relief *unless* the testimony contradicts indisputable facts or laws, the testimony is patently incredible or defies physical realities, the testimony is material and so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (quotation marks, ellipsis, and citation omitted). In other words, "although it is sometimes appropriate for a court to remove a credibility assessment from the jury's consideration, those circumstances are extremely rare and require

testimony that borders on being impossible." *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020).

Defendant's argues that AN's testimony was unbelievable because she made inconsistent statements about some details, such as when the abuse began and whether defendant ever got into the shower, and because her testimony conflicted with evidence provided by defendant and his girlfriend. However, nothing about AN's testimony requires this Court to invade the province of the jury by reassessing witness credibility. *Baskerville*, 333 Mich App at 283. Defendant argues that AN's testimony was inconsistent about whether he ever got into the shower with her. But AN consistently testified that defendant remained outside the shower and remained dressed. There was only one ambiguous statement—"we would get undressed"—which, in context, could have referred to her and her brother undressing separately before showering. Defendant also argues that AN testified that she was not made to take a shower at defendant's house again after an incident in which she argued with defendant, but defendant mischaracterizes her testimony. AN testified that she was excused from showering *that day and the next day*, but she clearly testified there were further occasions afterwards when she had to shower and defendant again abused her. And she also testified that she went to defendant's new house on a few occasions, and that she was required to shower there, so even if defendant's former house did not have a detachable showerhead, AN's testimony establishes that she could have been abused with a detachable showerhead on at least one occasion.

In short, nothing about AN's testimony was essentially impossible or hopelessly internally contradictory. *Solloway*, 316 Mich App at 183. To the extent it conflicted with testimony from other witnesses, it was the role of the jury to resolve such conflicts. *Baskerville*, 333 Mich App at 283.

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani